UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GLADYS APONTE,<br>    Plaintiff, | )<br>)<br>) |
| vs. | ) Case No. 1:19-cv-5260<br>) |
| ILLINOIS WORKER'S COMPENSATION<br>COMMISSION, | )<br>) Hon. Judge Harry Leinweber<br>) |
|     Defendant. | ) JURY TRIAL DEMANDED<br>) |

## SECOND AMENDED COMPLAINT

Plaintiff Gladys Aponte ("Ms. Aponte" or "Plaintiff"), by and through her counsel, Calvita J. Frederick and Associates, pursuant to Federal Rules of Civil Procedure 8(a) and 15(a)(2), complains against Defendant Illinois Worker's Compensation Commission ("IWCC" or "Defendant") and respectfully states as follows:

### INTRODUCTION

1. This case arises from an ongoing series of discriminatory actions taken by Ms. Aponte's former employer, the IWCC. Ms. Aponte was employed by the State of Illinois from May 10, 1993 to September 30, 2018. Her position at the time of termination was with he IWCC in the role of Industrial Commission Technician. ("Information Tech.").

2. During that time, she suffered continuous, targeted unfair treatment at the hands of her supervisor and other colleagues due to her age, color, national origin, and race.

3. Ms. Aponte was also the target of discriminatory and retaliatory action as a result of her filing a complaint with the Equal Employment Opportunity Commission before the IWCC terminated her from her job.

4. On August 2, 2019, Plaintiff filed a Pro Se Complaint sounding in employment

1

discrimination, a Petition to Proceed In Forma Pauperis, and a Motion for Appointment of Attorney Representation. [Dockets #1, #4 and #5]. This Court entered a 5-page order, denying the Petition to Proceed In forma Pauperis and the Motion for Appointment of Counsel.

5. After Ms. Aponte secured counsel and moved for reconsideration, this Court permitted Ms. Aponte to file this Second Amended Complaint [Docket #19].

## JURISDICTION

6. This action is brought under Title VII of the Civil Rights Act of 1964 ("Title VII") as amended, 42 U.S.C. § 2000e et seq., the Civil Rights Act of 1866 as codified by 42 U.S.C. § 1983, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.

7. This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, because this is a civil action arising under the laws of the United States, specifically Title VII, 42 U.S.C. § 2000e-16, 42 U.S.C. § 1983, and the ADEA, 29 U.S.C. § 626.

## VENUE

8. Pursuant to 28 U.S.C. § 1391(b), venue is proper in this District. Defendant is located within this District and a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District. Ms. Aponte was employed by and terminated by Defendant in this district.

## PARTIES

9. Ms. Aponte is an adult Latina resident of the State of Illinois. From July 1, 2015 through September 2018. At all times relevant to this suit, Ms. Aponte was employed by the IWCC at 100 W. Randolph St., 8th Floor, Chicago, Illinois 60601.

10. Defendant IWCC is a state of Illinois agency that purports to resolve disputes between employees and employers regarding work-related injuries and illnesses. Defendant is located at 100 W. Randolph St., 8th Floor, Chicago, Illinois 60601. *See*

https://www2.illinois.gov/agencies/IWCC. Defendant employs at least 15 full-time employees and so is a covered employer under both the ADEA and Title VII.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. On or about April 30, 2019, Ms. Aponte timely filed charges of age discrimination, national origin discrimination, color discrimination, race discrimination, and retaliation with the Equal Employment Opportunity Commission ("EEOC"). (See Charge of Discrimination attached hereto as Exhibit "A")

12. On May 7, 2019, Ms. Aponte received a Notice of Right to Sue from the EEOC. Ms. Aponte filed her original complaint on August 2, 2019, within 90 days of the receipt of the Notice. Ms. Aponte has fully complied with all prerequisites to jurisdiction in this Court under the ADEA and Title VII. (See Notice of Right to Sue attached hereto as Exhibit "A").

## STATEMENT OF FACTS

13. Ms. Aponte, a 54-year-old Latina woman, was hired as an Office Coordinator on May 10, 1093.

14. At all times during her employment, Ms. Aponte was fully qualified for her position, performed her job duties well and received positive performance reviews.

15. In July of 2015 Ms. Aponte applied for and took a promotion to prevent losing her job as an Office Coordinator due to downsizing of her department. The new position was Industrial Commission Technician, a position which required her to be bi-lingual.

16. Since July 1, 2015 when Yvona Castronova (Asian) became Ms. Aponte's supervisor, Ms. Aponte was continuously and repeatedly discriminated against in her workplace.

17. For example, she was recurrently suspended without pay without reasonable cause. First, she was suspended for six days when other employees were fighting, and Castronova informed her that she was "guilty by association."

3

18. Ms. Aponte was also suspended for 30 days because a co-worker did not take their scheduled break on time and then complained to Ms. Aponte's supervisor Castronova, about Ms. Aponte.

19. Each Information Tech had a punch holder at his or her desk. At one point, her supervisor Castronova, took Ms. Aponte's punch holder from her desk and put it in the cabinet for "everybody's usage."

20. Similarly, each Information Tech had a label writer. Once, when a new employee began in the filing area, the supervisor Castronova removed Ms. Aponte's label writer from her desk and gave it to the new employee. Ms. Aponte ordered a new label writer, and the supervisor Castronova removed it from her desk, claiming that she thought it was damaged, but she never ordered a new one for Ms. Aponte.

21. Every other Information Tech had a coat rack, except for Ms. Aponte. Ms. Aponte was able to hang her coat behind her on the edge of the supervisor's cubicle, until the supervisor Castronova, decided it was blocking her view, and gave Ms. Aponte a coat cubicle down by another Information Tech.

22. While other Information Techs were able to use the time they needed on the agency phone or on their personal cell phones, Ms. Aponte was admonished by her supervisor, Castronova, for using her cell phone while sitting at her desk.

23. On a daily basis, most of the Information Techs were late, and nothing was said. However, if Ms. Aponte came in to work late, the supervisor Castronova would ask her for a late train slip or else instruct her to use her own personal time to cover her late arrival.

24. Ms. Aponte was once written up for putting a caller on hold to take a call from Ms. Aponte's child's grade school. When another employee engaged in the same behavior, she did not face any consequences.

25. Ms. Aponte's supervisor Castronova engaged in more rigorous review of Ms. Aponte's work than of that of other employees.

26. Almost every time Ms. Aponte used a copy machine for work, the supervisor Castronova would approach Ms. Aponte and claim loudly and angrily that she, the supervisor, needed to use the machine. Ms. Aponte would attempt to use a different copy machine, only to have the same thing happen. At one point, Ms. Aponte started using her lunch breaks to make copies for work.

27. When Ms. Aponte's work was finished and ready to be paginated, she was the only one who had to wait for the supervisor to sign it, while everyone else received their work back and ready to be paginated.

28. At the IWCC each section of a department could see the entire schedule for time off for the whole year. All the employees in the Information Department got their time approved once requested, but Ms. Aponte had to wait for hers, regardless of how far in advance Ms. Aponte requested her time off. Even though she had considerable seniority, when she would request time off near a holiday, it was continuously denied by Castronova due to "operational needs."

29. Ms. Aponte had a calendar on the cubicle behind her that divided the supervisor and Ms. Aponte, and the supervisor asked Ms. Aponte to remove it, claiming that it blocked her view. This was in spite of Ms. Aponte's co-workers having large plants, files, and boards around their desks.

30. Ms. Aponte was subjected to name-calling in front of her co-workers, by the supervisor, Castronova.

31. Ms. Aponte was also excluded from meetings where information necessary for job performance was discussed. On several occasions Ms. Aponte would return from lunch or break

only to learn that a staff meeting had taken place but was over by the time she returned to her desk.

32. Some mornings, Ms. Aponte would be coming in to work and find the supervisor Castronova rummaging through the items in her desk. When Ms. Aponte asked what she needed, and Castronova would refuse to respond and would walk away silently.

33. On one occasion, Ms. Aponte was on the first floor of the State building with a friend using an ATM, and the supervisor was passing by. She stopped and approached Ms. Aponte, asking me Ms. Aponte why she was downstairs, wanting to know if she was on break. Ms. Aponte reminded her that she was on her lunch break, and Ms. Aponte walked away.

34. The Information department had seven to eight employees total at different times. Ms. Aponte was the only one continuously being monitored and suspended without cause.

35. Ms. Aponte was written up and investigated for using the bathroom.

36. Ms. Aponte filed complaints with the EEOC prior to her termination, including the most recent one on April 30, 2019.

37. Ms. Aponte was terminated from her position in September of 2018. No reason was given was for the termination.

## COUNT ONE
## National Origin Discrimination
## Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

38. The foregoing paragraphs are re-alleged and incorporated by reference herein.

39. Title VII of the Civil Rights Act of 1964, as amended, prohibits discrimination in employment practices and specifically 42 U.S.C. § 2000e-2 provides in pertinent part:

"**(a) Employer practices**
It shall be an unlawful employment practice for an employer— (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;"

40. Ms. Aponte, as a Latina, is a member of a protected class based on national origin.

41. Ms. Aponte performed her job satisfactorily at all times employed by Defendant.

42. Defendant terminated Ms. Aponte because of her national origin, Latina.

43. Ms. Aponte exhausted her administrative remedies.

44. As a result of Defendant's conduct, Ms. Aponte has suffered damages including economic losses and emotional distress, in an amount to be determined at trial.

45. Defendant's actions willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure Ms. Aponte and in conscious disregard of Ms. Aponte's rights.

## COUNT TWO
### Color Discrimination
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

46. Paragraphs 1-37 are re-alleged and incorporated by reference herein.

47. Title VII of the Civil Rights Act of 1964, as amended, prohibits discrimination in employment practices and specifically 42 U.S.C. § 2000e-2 provides in pertinent part:

> "**(a) Employer practices**
> It shall be an unlawful employment practice for an employer— (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;"

48. Ms. Aponte, as a Latina, is a member of a protected class based on color.

49. Ms. Aponte performed her job satisfactorily at all times employed by Defendant.

50. Defendant terminated Ms. Aponte because of her color.

51. Ms. Aponte exhausted her administrative remedies.

52. As a result of Defendant's conduct, Ms. Aponte has suffered damages including economic losses and emotional distress, in an amount to be determined at trial.

53. Defendant's actions willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure Ms. Aponte and in conscious disregard of Ms. Aponte's rights.

## COUNT THREE
## Age Discrimination
## Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621

54. Paragraphs 1-37 are re-alleged and incorporated by reference herein.

55. Ms. Aponte was over 40 years old and qualified for her position when she was terminated.

56. Ms. Aponte performed her job satisfactorily at all times employed by Defendant.

57. Defendant terminated Ms. Aponte because of Ms. Aponte's age.

58. Ms. Aponte exhausted her administrative remedies.

59. As a result of Defendant's conduct, Ms. Aponte has suffered damages including economic losses and emotional distress, in an amount to be determined at trial.

60. Defendant's actions willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure Ms. Aponte and in conscious disregard of Ms. Aponte's rights.

## COUNT FOUR
## Race Discrimination
## The Civil Rights Act of 1866, 42 U.S.C. § 1983

61. Paragraphs 1-37 are and incorporated by reference herein.

62. Title VII of the Civil Rights Act of 1964, as amended, prohibits discrimination in employment practices and specifically 42 U.S.C. § 2000e-2 provides in pertinent part:

> "**(a) Employer practices**
> It shall be an unlawful employment practice for an employer— (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;"

63. Ms. Aponte, as a Latina, is a member of a protected class based on race and national origin.

64. Ms. Aponte performed her job satisfactorily at all times employed by Defendant.

65. Defendant terminated Ms. Aponte because of her race and national origin.

66. By the conduct described above, Defendant deprived Ms. Aponte, a Latina, of the same rights as are enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendant, in violation of 42 U.S.C. § 1983.

67. As a result of Defendant's conduct, Ms. Aponte has suffered damages including economic losses and emotional distress, in an amount to be determined at trial.

68. Defendant's actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure Ms. Aponte and in conscious disregard of Ms. Aponte's rights.

## COUNT FIVE
### Retaliation for Engaging in Protected Activity
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a)

69. Paragraphs 1-37 are re-alleged and incorporated by reference herein.

70. Ms. Aponte engaged in protected activity when she complained about discrimination and disparate treatment.

71. Plaintiff has been threatened, subjected to racial and intimidating and derogatory statements; denied opportunities to complete her work; repeatedly harassed and subjected to unwanted and unnecessary scrutiny by her managers; subjected to intense scrutiny in the performance of her job; denied the tools necessary and the accoutrements of her position provided to other similarly situated employees; demeaned and humiliated in front of her peers, in retaliation for opposing improper and illegal activity, wrongfully accused of being away from her post; wrongfully accused of poor performance and the creation of a hostile and intimidating work environment by unnamed accusers without any detail

provided; selectively chosen for enforcement of certain policies while open and notorious violations were ignored; and wrongfully terminated all because of Ms. Aponte's complaints regarding conduct Plaintiff reasonably believed to be an unlawful employment practice under Title VII in violation of 42 U.S.C. § 2000e-3(a).

72. Defendant terminated Ms. Aponte for engaging in her protected activity.

73. Ms. Aponte, at all times employed by Defendant, performed her job satisfactorily.

74. As a result of Defendant's conduct, Ms. Aponte has suffered damages including economic losses and emotional distress, in an amount to be determined at trial.

75. Defendant's actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure Ms. Aponte and in conscious disregard of Ms. Aponte's rights.

76. A reasonable person in Plaintiff's position would find the Defendant's actions materially adverse

## JURY DEMAND

77. Ms. Aponte requests trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Aponte respectfully requests that the Court award her:

A. All past lost wages and benefits, plus interest;

B. Compensatory damages suffered because of this discrimination and retaliation;

C. An order that Defendant reinstate Ms. Aponte to a position comparable to her former one, or, instead of reinstatement, award her front pay and benefits;

D. All costs and reasonable attorney fees incurred in connection with this action; and

E. Any other damages and further relief as deemed just.

Dated: May 4, 2020

                                        Respectfully Submitted,

                                        GLADYS APONTE

                                        By: /s/ Calvita J. Frederick
                                        Attorney for Plaintiff

Calvita J. Frederick
Post Office Box 802976
Chicago, Illinois 60680-2976
312-421-5544
ARDC # 618400