**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Gladys Aponte, | |
| Plaintiff, | No. 19 C 5260 |
| v. | |
| Illinois Workers' Compensation Commission, | Judge Sunil R. Harjani |
| Defendant. | Magistrate Judge Heather K. McShain |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

TABLE OF CONTENTS

I.   Background ..................................................................................................................1

    A.   Plaintiff's 2015 EEOC Charge and 2016 Lawsuit. .........................................2

    B.   Plaintiff's Termination. ....................................................................................2

    C.   Plaintiff's 2019 EEOC Charge and Present Lawsuit. .....................................4

II.  Standard of Review .....................................................................................................4

III. Argument ....................................................................................................................5

    A. *Res Judicata* Bars Plaintiff's Discrimination and Retaliation Claims that Arose Prior to July 25, 2018. ...............................................................................5

    B. Plaintiff's Claims Based Upon Alleged Actions that Occurred Prior to July 4, 2018, are Barred by the Statute of Limitations. ...............................................7

    C. Plaintiff Failed to Exhaust her Claim for Color Discrimination. ....................7

    D. Plaintiff Cannot Show Race, Color, or National Origin Discrimination. .........8

        1. *Plaintiff Cannot Establish a Prima Facie Case of Discrimination.* ...........9

            a. *Plaintiff Was Not Meeting IWCC's Legitimate Expectations* ............9

            b. *Plaintiff Cannot Identify a Similarly Situated Comparator* ............11

i

      c. *Plaintiff Cannot Show Pretext* ........................................................12

    2. *No Reasonable Jury Could Find That Plaintiff Was Subjected to Intentional Discrimination.* ................................................................13

  E. Defendant is Entitled to Summary Judgment on Plaintiff's Retaliation Claim. .............15

    1. *Plaintiff's Termination Was Not Related to Her EEOC Charge or Lawsuit.* ........15

    2. *Plaintiff's Termination Was Not Related to the Dismissal of her Lawsuit.* ...........17

  F. Plaintiff Was Not Subjected to a Hostile Work Environment. ........................................18

IV. Conclusion ..........................................................................................................................20

<u>TABLE OF AUTHORITIES</u>

*Abubakar v. Walmart, Inc.*, No. 21-cv-06248, 2022 U.S. Dist. LEXIS 193651 (N.D. Ill. Oct. 25, 2022). ............................................................................................................... 7-8

*Adams v. City of Indianapolis*, 742 F.3d 720 (7th Cir. 2014) ........................................7

*Alexander v. Casino Queen, Inc.*, 739 F.3d 972 (7th Cir. 2014) ..................................20

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). ..................................................4

*Antonetti v. Abbott Labs.*, 563 F.3d 587 (7th Cir. 2009)........................................... 11-12

*Argyropoulos v. City of Alton*, 539 F.3d 724 (2008). ....................................................16

*Benuzzi v. Bd. of Educ. of Chi.*, 647 F.3d 652 (7th Cir. 2011) ................................... 4-5

*Bernstein v. Bankert,* 733 F.3d 190, 195 (7th Cir. 2012)...............................................5

*Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882 (7th Cir. 2001). ...........................................................................................................13

*Brooks v. Avancez*, 39 F.4th 424 (7th Cir. 2022) .........................................................15

*Brown v. Advoc. S. Suburban Hosp.*, 700 F.3d 1101 (7th Cir. 2012) ..................... 16-17

*Campbell v. Adventist Hinsdale Hosp.*, 526 F. App'x 650 (7th Cir. 2013). ..................10

*Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497 (7th Cir. 1994). ..........................................................7

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) . ..........................................................5

*Coleman v. Peters*, No. 23-3353, 2024 U.S. App. LEXIS 10793 (7th Cir. May 3, 2024) ............6

*Cullom v. Brown*, 209 F.3d 1035 (7th Cir. 2000) ..........................................................15

*EEOC v. Vill. at Hamilton Pointe LLC*, 102 F.4th 387 (7th Cir. 2024) ......................................14

*Evans v. Folding Guard Co.*, No. 15 C 7694, 2016 U.S. Dist. LEXIS 6211 (N.D. Ill. Jan. 20, 2016). ..........................................................8

*Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494 (7th Cir. 2017). ........................ 9-10

*Gates v. Bd. of Educ. of the City of Chi.*, 916 F.3d 631 (7th Cir. 2019). ......................................18

*Gates v. Caterpillar, Inc.*, 513 F.3d 680 (7th Cir. 2008). ..........................................................9

*Hall v. Vill. of Flossmoor Police Dep't*, No. 11 C 5283, 2012 U.S. Dist. LEXIS 171439, at *17 (N.D. Ill. Dec. 4, 2012). ..........................................................11

*Hamm v. Weyauwega Milk Prod., Inc.*, 332 F.3d 1058, 1062 (7th Cir. 2003) ............................19

*Howell v. Rush Copley Med. Grp. NFP*, No. 11 C 2689, 2012 U.S. Dist. LEXIS 32383 (N.D. Ill. Mar. 12, 2012) ..........................................................8

*Igasaki v. Ill. Dep't of Fin. & Prof'l Regulation*, 988 F.3d 948 (7th Cir. 2021). ..............13, 16, 19

*Jones v. Ill. Dep't of Children & Family Servs.*, No. 16 C 8522, 2018 U.S. Dist. LEXIS 187865, (N.D. Ill. June 2, 2018). .......................................................... 10-11

*Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923 (7th Cir. 2020) ......................................................13

*Kedas v. Ill. Dep't of Transport.*, 149 F.7th 951, 958–59 (7th Cir. 2025) ....................................17

*Khungar v. Access Cmty. Health Network*, 985 F.3d 565 (7th Cir. 2021)......................................9

*Kidwell v. Eisenhauer*, 679 F.3d 957 (7th Cir. 2012) )..........................................................16, 17

*Logan v. City of Chi.*, 4 F.4th 529 (7th Cir. 2021)..........................................................15, 17

*Luckie v. Ameritech Corp.*, 389 F.3d 708 (7th Cir. 2004). ............................................................20

*Mannie v. Potter*, No. 04 C 1584, 2006 U.S. Dist. LEXIS 114377 (N.D. Ill. June 1, 2006) ........20

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ................................................... passim

*Mendenhall v. Mueller Streamline Co.*, 419 F.3d 686 (7th Cir. 2005) ........................................18

*Milligan-Grimstad v. Stanley*, 877 F.3d 705 (7th Cir. 2017) .......................................................20

*Moore v. Vital Prods., Inc.*, 641 F.3d 253 (7th Cir. 2011)...............................................................7

*Moore v. Office of the Ill. Sec'y of State*, No. 22 C 3584, 2023 U.S. Dist. LEXIS 178941 (N.D.

    Ill. Oct. 4, 2023).................................................................................................................10, 11

*Naik v. Boehringer Ingelheim Pharm., Inc.*, 627 F.3d 596 (7th Cir. 2010)..................................10

*Oest v. Ill. Dep't of Corr.*, 240 F.3d 605 (7th Cir. 2001)..............................................................11

*Outlaw v. Newkirk*, 259 F.3d 833 (7th Cir. 2001) ..........................................................................5

*Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016) ..................................................8, 13

*Palka v. City of Chi.*, 662 F.3d 428 (7th Cir. 2011) ..............................................................5-6, 19

*Patton v. Indianapolis Pub. Sch. Bd.*, 276 F.3d 334 (7th Cir. 2022) ...........................................19

*Porter v. City of Chi.*, 700 F.3d 944 (7th Cir. 2012).......................................................................4

*Raymond v. City of Chi.*, 183 F. Supp. 2d 1060 (N.D. Ill. 2002)..................................................15

*Robertson v. Wis. Dep't of Health Serv.*, 949 F.3d 371 (7th Cir. 2020) ......................................12

*Roney v. Ill. Dep't of Transp.*, 474 F.3d 455 (7th Cir. 2007)....................................................7, 19

*Rowlands v. United Parcel Serv. – Fort Wayne*, 901 F.3d 792 (7th Cir. 2018). .........................15

*Saud v. DePaul Univ.*, 154 F.4th 563 (7th Cir. 2025) ..................................................................15

*Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913 (7th Cir. 2000). .................................................16

*Swearnigen v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852 (7th Cir. 2010). ..................................10

*Thompson v. Fairmont Chi. Hotel*, 525 F. Supp. 2d 984 (N.D. Ill. 2007)......................................8

iv

*U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849 (7th Cir. 2009)..............................................5

*Vance v. Ball State Univ.*, 133 S. Ct. 2434 (2013)........................................................19

*Wells v. Coker*, 707 F.3d 756 (7th Cir. 2013). ...............................................................4

*Williams v. DeJoy*, No. 24-2272, 2025 U.S. App. LEXIS 4303 (7th Cir. Feb. 25, 2025) ......13, 18

*Wilson v. AM Gen. Corp.*, 167 F.3d 1114 (7th Cir. 1999)............................................12

*Young-Gibson v. Bd. of Educ. of City of Chi.*, No. 11 C 8982, 2013 U.S. Dist. LEXIS 123108

(N.D. Ill. Aug. 29, 2013)....................................................................................11

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Gladys Aponte, | |
| Plaintiff, | No. 19 C 5260 |
| v. | |
| Illinois Workers' Compensation Commission, | Judge Sunil R. Harjani |
| Defendant. | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

## I.    Background

Plaintiff Gladys Aponte ("Plaintiff"), a Latina woman of Dominican heritage, was formerly employed by the Illinois Workers' Compensation Commission ("Defendant" or "IWCC"). Def.'s L. R. 56.1 Statement of Undisputed Material Facts ¶ 1 [hereinafter DSOF]. From November 16, 2014, until her termination, effective September 19, 2018, Plaintiff worked in IWCC's Information Department in the position of Industrial Commission Technician-Spanish Speaking, where she was supervised by Yvonna Castronova ("Castronova"). *Id.* ¶¶ 1–2.

Over time, Plaintiff's performance continuously declined, and she failed to meet Defendant's expectations in the vast majority of her job duties. *Id.* ¶¶ 6–9, 13. Indeed, two years before her termination, Plaintiff's union agreed with IWCC to change Plaintiff's official job duties to remove approximately 45 percent of her official job duties, which Plaintiff had been failing to adequately perform. *Id.* ¶ 13. Additionally, Plaintiff had a lengthy history of misconduct at IWCC, for which she received progressive discipline pursuant to the collective bargaining agreement. *Id.* ¶¶ 10–12. Specifically, prior to her termination, Plaintiff had been disciplined on eleven (11) prior occasions, including eight (8) previous suspensions. *Id.* ¶ 9.

1

### A.    Plaintiff's 2015 EEOC Charge and 2016 Lawsuit

On July 13, 2015, Plaintiff filed a Charge of Discrimination with Illinois Department of Human Rights (IDHR) and Equal Employment Opportunity Commission (EEOC) ("2015 EEOC Charge"), alleging that the IWCC discriminated against her on the basis of race, sex, national origin, and in retaliation for engaging in protected activity. DSOF ¶ 14. Thereafter, on January 16, 2016, Plaintiff filed the action *Aponte v. Illinois Workers Compensation Commission*, No. 16 CV 0459 (N.D. Ill.) (the "2016 Lawsuit"), alleging, *inter alia*, that the IWCC and its employees discriminated against Plaintiff based on her race, national origin, sex, age, and in retaliation for raising complaints of discrimination. *Id.* ¶ 15. Specifically, Plaintiff alleged that she was repeatedly disciplined, subjected to a hostile work environment, given poor performance evaluations, and treated unfairly by Castronova throughout her employment with the IWCC. *Id.*

IWCC moved for summary judgment in Plaintiff's 2016 Lawsuit. *Id.* ¶ 16. On July 25, 2018—the date that Plaintiff's summary judgment response was due—Plaintiff, through counsel, voluntarily dismissed all claims in her 2016 Lawsuit with prejudice pursuant to the Federal Rules of Civil Procedure 41(a)(1)(A)(ii). *Id.* ¶ 17.

### B.    Plaintiff's Termination

In June and early July 2018, Castronova, Plaintiff's supervisor, reported to IWCC Human Resources and Labor Director John Lagattuta ("Lagattuta") six (6) incidents of misconduct by Plaintiff, including that Plaintiff called Castronova a "bitch," told Castronova that Castronova had "mental illness," threw paperclips and clip binders on a coworker's desk, verbally harassed another coworker, abandoned her work station without permission, and filmed Castronova on Plaintiff's cell phone without permission. *Id.* ¶¶ 18–27. Several of these incidents were also separately

reported by Plaintiff's co-workers, Rosalie Goral, Janette Palomares, and Darren Crowder. *Id.* ¶¶ 19, 21, 26.

On July 11, 2018, Plaintiff received notification of the reports of her misconduct. *Id.* ¶ 28. On July 12, 2018, Plaintiff attended an investigative interview with Lagattuta and Brendan O'Rourke, the Research and Education Manager for IWCC, where Plaintiff was represented by a union steward. *Id.* ¶ 29. Following Plaintiff's investigative interview, Lagattuta sought guidance from Lora Rausch ("Rausch"), the Labor Relations Administrator of the Illinois Department of Central Management Services ("CMS"), a third-party state agency responsible for approving discipline issued to employees of Illinois state agencies, as to the appropriate discipline for Plaintiff's six (6) offenses. *Id.* ¶¶ 30–33. Rausch advised Lagattuta that termination was warranted and appropriate under the circumstances, considering Plaintiff's history of progressive discipline. *Id.* ¶ 33. Rausch had no knowledge of Plaintiff's 2015 EEOC Charge, 2016 Lawsuit, or any other protected activity by Plaintiff. *Id.* ¶ 41.

Thereafter, a pre-disciplinary meeting was held on August 14, 2018, where Plaintiff was represented by a union steward and given the opportunity to respond to the charges against her. *Id.* ¶ 34. On August 20, 2018, Plaintiff submitted a written rebuttal to the charges on August 20, 2018. *Id.* ¶ 35. IWCC determined that the allegations against Plaintiff were substantiated, and Plaintiff was found to have violated multiple IWCC policies. *Id.* ¶¶ 36–37. Further, the IWCC determined that termination was the appropriate level of progressive discipline for Plaintiff's collective infractions based on Plaintiff's disciplinary history. *Id.* ¶ 38.

Plaintiff's termination required approval by CMS, who independently reviewed IWCC's investigation into Plaintiff's misconduct. *Id.* ¶¶ 39–45. Following her review, Colleen Alderman ("Alderman"), the Interim Deputy Director of Labor Relations for CMS, determined that IWCC's

investigation of Plaintiff was fair; that IWCC had sufficient evidence to substantiate the charges against Plaintiff; that IWCC had just cause to terminate Plaintiff; and that termination was reasonable discipline under the circumstances, considering Plaintiff's collective infractions as a whole and considering Plaintiff's past disciplinary history. *Id.* ¶¶ 42–43. Alderman had no knowledge of Plaintiff's skin color, national origin, 2015 EEOC charge, 2016 lawsuit, or any other protected activity by Plaintiff. *Id.* ¶ 44. As a result, Plaintiff was terminated from IWCC, effective September 19, 2018. *Id.* ¶ 46.

### C.     Plaintiff's 2019 EEOC Charge and Present Lawsuit

On April 30, 2019, Plaintiff filed a second Charge of Discrimination against the IWCC with the EEOC ("2019 EEOC Charge"). DSOF ¶¶ 47–50. Plaintiff alleged that IWCC discriminated against Plaintiff based on her race and national origin, and in retaliation for engaging in protected activity. *Id.* Plaintiff filed the present lawsuit on August 2, 2019. Dkt. No. 1. In her operative Third Amended Complaint, Plaintiff brings four (4) counts under Title VII of the Civil Rights Act, 42 U.S.C. §2000e *et seq.* ("Title VII"), alleging discrimination based on her race, color, national origin, and retaliation for engaging in protected activity. Third Am. Compl., Dkt. No. 58. For the reasons set forth below, Defendant is entitled to summary judgment on all counts.

## II.     Standard of Review

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Porter v. City of Chi.*, 700 F.3d 944, 950 (7th Cir. 2012). "A genuine issue of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Wells v. Coker*, 707 F.3d 756, 760 (7th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Summary judgment must be granted if the nonmoving party is "unable to

'establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial.'" *Benuzzi v. Bd. of Educ. of Chi.*, 647 F.3d 652, 662 (7th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original)). Moreover, not all factual disputes preclude the entry of summary judgment—only those that "could affect the outcome of the suit under governing law." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001).

## III.   Argument

### A.   *Res Judicata* Bars Plaintiff's Discrimination and Retaliation Claims that Arose Prior to July 25, 2018.

Plaintiff's discrimination and retaliation claims based on alleged conduct that pre-dates July 25, 2018, are barred under the doctrine of *res judicata*. "Where a final judgment has been rendered on the merits of a claim, *res judicata* protects the finality of that judgment and prevents parties from undermining it by attempting to relitigate the claim." *Palka v. City of Chi.*, 662 F.3d 428, 437 (7th Cir. 2011). "*Res judicata* promotes predictability in the judicial process, preserves the limited resources of the judiciary, and protects litigants from the expense and disruption of being haled into court repeatedly." *Id.* at 437 (citations omitted).

*Res judicata* bars a claim where, as here, the following elements are met: "(1) an identity of parties; (2) a final judgment on the merits; and (3) an identity of the cause of action (as determined by comparing the suit' operative facts)." *Id.* (citing *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 851 (7th Cir. 2009)). "Federal law defines a cause of action as a core of operative facts which give rise to a remedy." *Bernstein v. Bankert,* 733 F.3d 190, 195 (7th Cir. 2012) (internal quotation marks and citation omitted). "Accordingly, the test for an identity of the causes of action is whether the claims arise out of the same set of operative facts or the same transaction." *Id.* (internal quotation marks and citation omitted). "Where it applies, *res judicata*

prevents the relitigation of claims already litigated as well as those that could have been litigated but were not." *Id.* (citation omitted).

Here, *res judicata* bars any claims by Plaintiff for employment discrimination or retaliation that predate July 25, 2018. First, an identity of the parties exists because Plaintiff brought her 2016 Lawsuit against Defendant IWCC. DSOF ¶ 12. Second, a final judgment on the merits was entered. Rule 41 provides that "a notice of dismissal operates as an adjudication on the merits." Fed. R. Civ. P. 41(a)(1)(B). Plaintiff 2016 Lawsuit was dismissed with prejudice pursuant to the parties' agreed stipulation to dismiss the case with prejudice, which was filed in response to Defendant's motion for summary judgment. *Id.* ¶¶ 13–14. This dismissal with prejudice constitutes a final judgment on the merits. Fed. R. Civ. P. 41(a)(1)(B); *see CFE Grp., LLC v. FirstMerit Bank, N.A.*, 809 F.3d 346, 351 n.1 (7th Cir. 2015) ("The risk of repetitive litigation and forum-shopping is sharply limited by Rule 41(a)(1)(B), which provides that if the federal plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits, meaning that the dismissal would be with prejudice and thus could cause claim preclusion." (internal quotation marks omitted)); *see also Coleman v. Peters*, No. 23-3353, 2024 U.S. App. LEXIS 10793, at *8 (7th Cir. May 3, 2024) (affirming the applicability of federal claim preclusion where the district court dismissed plaintiff's complaint "with prejudice" which amounted to a final judgment on the merits).

Finally, Plaintiff's allegations of employment discrimination and retaliation that arose prior to July 25, 2018—Third Am. Compl. ¶¶ 13–14, 18–22—are squarely based on the same or nearly the same factual allegations of repeated discipline, hostile work environment, and alleged mistreatment by Castronova that Plaintiff brought in her 2016 Lawsuit, DSOF ¶ 12. Because these claims were either "already litigated" in Plaintiff's 2016 Lawsuit or "could have been litigated" in

that suit, they are barred by *res judicata*. *See Palka*, 662 F.3d at 437. Thus, the Court should enter summary judgment in favor of Defendant on Plaintiff's claims that arose prior to July 25, 2018.

**B.    Plaintiff's Claims Based Upon Alleged Actions that Occurred Prior to July 4, 2018, are Barred by the Statute of Limitations.**

Defendant is also entitled to summary judgment on any discrete acts of alleged discrimination or retaliation that occurred before July 4, 2018, because the claims are time-barred. Before filing suit under Title VII, a plaintiff must file a charge of discrimination with the EEOC within 300 days from the occurrence of an allegedly discriminatory act. 42 U.S.C. § 2000e–5(e)(1); *Adams v. City of Indianapolis*, 742 F.3d 720, 729–30 (7th Cir. 2014). A plaintiff is only allowed to bring claims that occurred within that 300-day period. *Id*. Where "a plaintiff does not file a charge concerning a discrete act of discriminatory conduct within 300 days of its occurrence, [her] claim is time-barred and [s]he may not recover." *Roney v. Ill. Dep't of Transp.*, 474 F.3d 455, 460 (7th Cir. 2007). Here, Plaintiff filed her EEOC Charge on April 30, 2019. DSOF ¶ 42. Accordingly, Plaintiff's claims in this case are barred to the extent they rely on alleged conduct that occurred more than 300 days prior (*i.e.*, before July 4, 2018).

**C.    Plaintiff Failed to Exhaust her Claim for Color Discrimination.**

Defendant is entitled to summary judgment on Plaintiff's color discrimination claim. As a general rule, a plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge. *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). Whether claims are within the scope of the EEOC charge is a question of law. *Moore v. Vital Prods., Inc.*, 641 F.3d 253, 257 (7th Cir. 2011). The only exception to this rule is for claims that are "like or reasonably related" to a claim that was included in the charge and can be reasonably expected to grow out of an investigation of the allegations in the charge. *See, e.g.*, *Cheek*, 31 F.3d at 500.

"[C]olor discrimination, as opposed to race discrimination, arises when the particular hue

of the plaintiff's skin is the cause of the discrimination." *Abubakar v. Walmart, Inc.*, No. 21-cv-06248, 2022 U.S. Dist. LEXIS 193651, at *7 (N.D. Ill. Oct. 25, 2022) (cleaned up). For the purpose of determining whether a claim is within the scope of an EEOC charge, "discrimination on the basis of color is not reasonably related to discrimination on the basis of race." *Thompson v. Fairmont Chi. Hotel*, 525 F. Supp. 2d 984, 989 (N.D. Ill. 2007) (collecting cases).

While Plaintiff alleged to the EEOC that she was discriminated based on her race and national origin, her 2019 EEOC Charge does not allege color discrimination or reference the hue or shade of Plaintiff's skin. DSOF ¶¶ 48–50. As such, Plaintiff failed to exhaust her claim for color discrimination. *See Abubakar*, 2022 U.S. Dist. LEXIS 193651, at *8 (finding a charge alleging race discrimination was insufficient to exhaust a claim for color discrimination); *Evans v. Folding Guard Co.*, No. 15 C 7694, 2016 U.S. Dist. LEXIS 6211, at *3 (N.D. Ill. Jan. 20, 2016) (same); *Howell v. Rush Copley Med. Grp. NFP*, No. 11 C 2689, 2012 U.S. Dist. LEXIS 32383, at *10 (N.D. Ill. Mar. 12, 2012) (same). Accordingly, summary judgment should be entered in favor of Defendant on Plaintiff's color discrimination claim.

### D. Plaintiff Cannot Show Race, Color, or National Origin Discrimination.

Defendant is entitled to summary judgment on Plaintiff's race, color, or national origin discrimination claims. The only adverse employment action alleged by Plaintiff in this action is her termination. DSOF ¶ 51. However, the record is void of any evidence to support that Plaintiff's termination was discriminatory. Indeed, Plaintiff cannot point to evidence sufficient to survive summary judgment under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), or viewing the evidence cumulatively, as articulated in *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016).

### 1. *Plaintiff Cannot Establish a Prima Facie Case of Discrimination.*

The *McDonnell Douglas* framework remains "remains an efficient way to organize, present, and assess evidence in discrimination cases." *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 573 (7th Cir. 2021) (cleaned up). To establish a prima facie case under *McDonnell Douglas*, a plaintiff must show that "(1) she is a member of a protected class, (2) she was meeting the defendant's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees who were not members of her protected class were treated more favorably." *Id.* (cleaned up). If a plaintiff sets forth sufficient evidence to establish a *prima facie* claim of discrimination, "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *Id.* (cleaned up).

Here, Plaintiff cannot establish a *prima facie* case of discrimination because Plaintiff cannot show that she was meeting IWCC's legitimate expectations at the time of her termination. Nor can Plaintiff show that similarly situated individuals outside her protected class were treated more favorably.

### a. *Plaintiff Was Not Meeting IWCC's Legitimate Expectations.*

Courts determine whether an employee was meeting her employer's legitimate expectations by viewing the employee's "performance through the eyes of [her] supervisors." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008) (citation omitted). Here, the undisputed facts show that, prior to Plaintiff's termination, she had a history of misconduct, discipline, and poor performance reviews at IWCC. DSOF ¶¶ 6–9, 11–13, 18–27, 36–38. Plaintiff's consistently poor work performance defeats any *prima facie* case of discrimination. *See Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 500 (7th Cir. 2017) (granting summary judgment in favor

of the defendant where the plaintiff's "job performance . . . was fraught with problems and fell well below the district's legitimate expectations"); *Campbell v. Adventist Hinsdale Hosp.*, 526 F. App'x 650, 653 (7th Cir. 2013) (finding that the plaintiff failed to present a prima facie case of racial discrimination where her performance was deficient in the year preceding her discharge).

Further, to establish she was meeting her employer's legitimate expectations at the time of her termination, Plaintiff must show that she did not violate its policies. *Naik v. Boehringer Ingelheim Pharm., Inc.*, 627 F.3d 596, 600 (7th Cir. 2010). IWCC investigated the statement of charges against Plaintiff, collected witness statements from Castronova and others, and gave Plaintiff a full opportunity to respond to the allegations against her. DSOF ¶¶ 18–27, 36–38. Plaintiff attended a pre-disciplinary meeting with union representation and submitted a written rebuttal. *Id.* ¶¶ 34–35. Based upon the evidence presented, IWCC determined that the allegations against Plaintiff were substantiated, and Plaintiff was found to have violated multiple IWCC policies based upon six (6) distinct incidents of misconduct from June and July 2018. *Id.* ¶¶ 18–27, 36–38. Significantly, Plaintiff has admitted to several incidents of misconduct that formed the basis of her termination. *Id.* ¶¶ 18, 20, 23, 25. As such, Plaintiff cannot show that she was meeting IWCC's legitimate expectations at the time of her termination. *See Swearnigen v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 861, 863 (7th Cir. 2010) (finding the plaintiff did not meet legitimate job expectations because he violated general orders); *see also Moore v. Office of the Ill. Sec'y of State*, No. 22 C 3584, 2023 U.S. Dist. LEXIS 178941, at *9 (N.D. Ill. Oct. 4, 2023) (holding that the plaintiff who "received multiple reprimands for job performance deficiencies during her employment" could not establish a prima facie case of discrimination); *Jones v. Ill. Dep't of Children & Family Servs.*, No. 16 C 8522, 2018 U.S. Dist. LEXIS 187865, at *17–18 (N.D. Ill. June 2, 2018) (finding the plaintiff who was found to have violated policy and was not meeting

employer's legitimate expectations); *Hall v. Vill. of Flossmoor Police Dep't*, No. 11 C 5283, 2012 U.S. Dist. LEXIS 171439, at *17 (N.D. Ill. Dec. 4, 2012) (granting summary judgment where plaintiff "violated multiple Department polices and, therefore, failed to meet the Department's legitimate expectations").

### b.    *Plaintiff Cannot Identify a Similarly Situated Comparator.*

Plaintiff's also cannot establish a *prima facie* case of discrimination because she cannot identify a similarly situated comparator. A plaintiff's "own uncorroborated, conclusory statements that similarly situated co-workers were treated differently" is insufficient to defeat summary judgment. *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 614 (7th Cir. 2001). Here, Plaintiff has not identified any other IWCC employees who committed similar acts of misconduct as those that gave rise to Plaintiff's termination, DSOF ¶¶ 54–56—let alone employees who committed the breadth of violations she did within a two-month period, *id.* ¶¶ 18–27, or with Plaintiff's same disciplinary history prior to the misconduct, *id.* ¶¶ 11–12. Thus, Plaintiff cannot establish that any similarly situated individuals outside her protective class were treated more favorably. *See Moore*, 2023 U.S. Dist. LEXIS 178941, * at 12–13 (finding the plaintiff failed to "provide evidence that would permit a reasonable jury to find that these guards are appropriate comparator" without specific evidence of their "conduct," "performance evaluations," or "whether they were punished more leniently for violating the same rules" the plaintiff violated); *Young-Gibson v. Bd. of Educ. of City of Chi.*, No. 11 C 8982, 2013 U.S. Dist. LEXIS 123108, at *10 (N.D. Ill. Aug. 29, 2013) ("While the similarly-situated inquiry does not require 'near one-to-one mapping between employees[,] the employees receiving more lenient disciplinary treatment must at least share a comparable set of failings.'" (cleaned up)). Accordingly, Defendant is entitled to summary judgment under the *McDonnell Douglas* framework. *See Antonetti v. Abbott Labs.*, 563 F.3d 587,

11

592 (7th Cir. 2009) (affirming summary judgment where there was insufficient evidence that co-workers had comparable performance problems or were otherwise similarly situated to the plaintiff).

### c. *Plaintiff Cannot Show Pretext.*

Even if Plaintiff was able to establish a *prima facie* case of discrimination under *McDonell Douglas*—which she cannot do—Defendant is nevertheless entitled to summary judgment. Where, as here, an employer offers legitimate and non-discriminatory reasons for its employment actions, *see* DSOF ¶¶ 18–46, "the employee has the burden of demonstrating that each proffered nondiscriminatory reason is pretextual," *Wilson v. AM Gen. Corp.*, 167 F.3d 1114, 1120 (7th Cir. 1999). "In determining whether the employer's reason can be characterized as pretextual, [courts] do not evaluate whether the employer's proffered justification was accurate or even whether it was unfair. [The] sole focus is on whether the employer's stated reason can be characterized as a falsehood rather than an honestly held belief." *Robertson v. Wis. Dep't of Health Serv.*, 949 F.3d 371, 378 (7th Cir. 2020) (citations omitted).

Here, Plaintiff cannot show that IWCC's legitimate and non-discriminatory reasons for her termination were pretextual. In June and July 2018, Castronova—as well as Plaintiff's co-workers Rosalie Goral, Janette Palomares, and Darren Crowder—reported multiple instances of misconduct by Plaintiff. DSOF ¶¶ 18–27. Following a substantial internal investigation, IWCC determined that the allegations against Plaintiff were substantiated, and Plaintiff was found to have violated multiple IWCC policies. *Id.* ¶¶ 18–29, 34–37. Further, IWCC determined that termination was the appropriate discipline for Plaintiff's collective infractions considering Plaintiff's previous progressive discipline, including eight (8) previous suspensions. *Id.* ¶¶ 10–12, 38. Moreover, CMS, an independent third party, reviewed IWCC's investigation into Plaintiff's misconduct and

determined that there was good cause to terminate Plaintiff under the circumstances. *Id.* ¶¶ 30–33, 39–46.

Plaintiff has not and cannot adduce any evidence to show that Defendant's stated reasons for her termination are pretextual. *See Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 894 (7th Cir. 2001) (opining that the plaintiff's disagreement with the reason and analysis for the staffing demands at issue in no way indicated that the individual did not honestly believe it). Crucially, Plaintiff cannot show pretext where she has admitted to several of the instances of misconduct that gave rise to her termination. DSOF ¶¶ 18, 20, 23, 25. *See Williams v. DeJoy*, No. 24-2272, 2025 U.S. App. LEXIS 4303, at *7 (7th Cir. Feb. 25, 2025) (affirming summary judgment on retaliation claim where the plaintiff did not "contest that her attendance records show chronic tardiness and unexplained absences"). As such, Defendant is entitled to summary judgment under the *McDonnel Douglas* framework.

### 2. No Reasonable Jury Could Find That Plaintiff Was Subjected to Intentional Discrimination.

To survive summary judgment "without resorting to *McDonnell Douglas*, a plaintiff must provide either direct or circumstantial evidence that supports an inference of intentional discrimination." *Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923, 929 (7th Cir. 2020) (internal quotation omitted). A plaintiff must present sufficient evidence that "would permit a reasonable factfinder to conclude that the plaintiff's race ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz*, 834 F.3d at 765. "'[A]ll evidence belongs in a single pile and must be evaluated as a whole.'" *Igasaki v. Ill. Dep't of Fin. & Prof'l Regul.*, 988 F.3d 948, 957 (7th Cir. 2021) (quoting *Ortiz*, 834 F.3d at 766).

Here, taking the evidence as a whole, there is no evidence to suggest that Plaintiff was subjected to discrimination on the basis of her race, color, or national origin. Rather, the evidence

shows that Plaintiff was terminated for legitimate, non-discriminatory reasons following IWCC's investigation into six (6) incidents of Plaintiff's misconduct from June and July 2018. DSOF ¶¶ 18–46. Plaintiff cites only two incidents to support her belief that her termination was connected to her race, color, or national origin—and both are insufficient to defeat summary judgment. First, in Plaintiff's 2017 performance evaluation, Castronova encouraged Plaintiff to enroll in an English as a Second Language (ESL) class. DSOF ¶ 57. However, Plaintiff fails to show any discriminatory intent behind Castronova's recommendation where Castronova herself was also born outside of the United States and adopted English as her second language. *Id.* ¶ 61. To the contrary, Castronova only encouraged Plaintiff to enroll in an ESL class in response to Plaintiff's own representation that she could not understand Castronova's instructions or general information at IWCC because English is her second language. *Id.* ¶ 57.

Second, when Plaintiff was assigned to answer phones at IWCC, Castronova said to Plaintiff, "Speak slower so people can understand." *Id.* ¶ 58. Plaintiff's job duties at the time included receiving telephone inquiries and answering questions from callers. *Id.* ¶ 59. Regardless of whether Plaintiff may have subjectively interpreted Castronova's statement as a reference to Plaintiff's accent, the statement is neutral on its face with respect to Plaintiff's race, color, and national origin. Indeed, Castronova had no issue with Plaintiff's accent or anyone else's accent at IWCC. *Id.* ¶ 62. Thus, under the circumstances Plaintiff cannot identify a prohibited character or purpose to the remarks. *See EEOC v. Vill. at Hamilton Pointe LLC*, 102 F.4th 387, 422 (7th Cir. 2024) ("The objective offensiveness inquiry is driven by context.")

Plaintiff's suggestion of any animus toward her accent is further undercut by the facts that Plaintiff's position at IWCC required fluency in Spanish, and Plaintiff was paid additional compensation in her position because she is bilingual and was often required to communicate in

Spanish. *Id.* ¶ 60. Moreover, the incidents cited by Plaintiff are far too removed from the formal disciplinary process that resulted in her termination to suggest that her termination was discriminatory. *See Saud v. DePaul Univ.*, 154 F.4th 563, 572 (7th Cir. 2025) (affirming summary judgment where the purported "evidence of racial bias" was "too scant and disjointed" to "undercut the specific justifications given by [defendant] for [plaintiff's] termination" (cleaned up)). Accordingly, no reasonable jury could find that Plaintiff was terminated based on her race, color, or national origin, and Defendant is entitled to summary judgment.

### E. Defendant is Entitled to Summary Judgment on Plaintiff's Retaliation Claim.

Defendant is also entitled to summary judgment on Plaintiff's retaliation claim. "To survive summary judgment on a timely retaliation claim, plaintiff must offer evidence of: (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Logan v. City of Chi.*, 4 F.4th 529, 538 (7th Cir. 2021) (cleaned up). Specifically, an employee must show that the protected activity "was the 'but-for' cause of the challenged adverse employment action." *Brooks v. Avancez*, 39 F.4th 424, 440 (7th Cir. 2022) (citing *Rowlands v. United Parcel Serv. – Fort Wayne*, 901 F.3d 792, 801 (7th Cir. 2018)). Indeed, causation is "the ultimate inquiry in evaluating a Title VII claim" of retaliation. *Cullom v. Brown*, 209 F.3d 1035, 1041 (7th Cir. 2000) (cleaned up).

#### 1. Plaintiff's Termination Was Not Related to Her EEOC Charge or Lawsuit.

The record lacks evidence to causally link Plaintiff's termination to her 2015 EEOC Charge or 2016 Lawsuit. Courts recognize that "the longer the time between the protected conduct and the adverse employment action, the weaker the inference that the employer engaged in the adverse employment action due to the protected conduct." *Raymond v. City of Chi.*, 183 F. Supp. 2d 1060, 1073 (N.D. Ill. 2002). Here, Plaintiff was terminated over two (2) and three (3) years after Plaintiff

15

filed her 2016 Lawsuit and 2015 EEOC Charge, respectively. *See also Igasaki,* 988 F.3d at 959 (holding that a two-month gap between the plaintiff's protected activities and his termination could not, on its own, support an inference of retaliation); *Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (2008) (holding that a seven-week interval between the protected activity and the adverse employment action was too long to support an inference of retaliation); *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000) (holding that a three-month interval was too long to support an inference of retaliation).

The evidence shows that Plaintiff was terminated for legitimate, non-retaliatory reasons following IWCC's investigation into six (6) incidents of Plaintiff's misconduct from June and July 2018. DSOF ¶¶ 18–46. Crucially, Plaintiff admitted to several incidents of the misconduct found by the IWCC. DSOF ¶¶ 18, 20, 23, 25. Plaintiff's 2015 EEOC Charge and 2016 Lawsuit, filed years prior, "does not immunize [her] from being subsequently disciplined or terminated for inappropriate workplace behavior." *Kidwell v. Eisenhauer*, 679 F.3d 957, 967 (7th Cir. 2012).

Further, Lagattuta did not consider Plaintiff's 2015 EEOC Charge or 2016 Lawsuit when he decided to recommend Plaintiff's discharge as the appropriate discipline for Plaintiff's collective infractions. DSOF ¶ 80. Rather, Plaintiff had already received progressive discipline on eleven (11) prior occasions, including eight (8) prior suspensions. *Id.* ¶¶ 11–12. Further, before deciding on the level of discipline for Plaintiff's misconduct, IWCC sought guidance from CMS— an independent third party—who advised that discharge was warranted and appropriate under the circumstances. *Id.* ¶¶ 32–33. The individuals at CMS who made this recommendation had no knowledge of Plaintiff's 2015 EEOC Charge or 2016 Lawsuit. *Id.* ¶¶ 41, 44.

Without any specific evidence causally linking her termination to her protected activity, Plaintiff's allegations of any "retaliatory animus relies entirely on speculation." *See Brown v.*

*Advoc. S. Suburban Hosp.*, 700 F.3d 1101, 1108 (7th Cir. 2012). In sum, "it is apparent that significant intervening events—not the least of which was [Plaintiff's] own negative behavior— that occurred after [Plaintiff's] acts of purportedly protected speech were the cause of" her termination. *See Kidwell*, 679 F.3d at 969. As such, Defendant is entitled to summary judgment on Plaintiff's retaliation claim. *See Kedas v. Ill. Dep't of Transport.*, 149 F.7th 951, 958–59 (7th Cir. 2025) (affirming summary judgment on retaliation claim based upon uncontradicted intervening events where the plaintiff was "disciplined for his complete disregard of his supervisor's instructions . . . reprimanded for his continuous refusal to follow IDOT policy, and counseled for inability to work with various contractors").

### 2. *Plaintiff's Termination Was Not Related to the Dismissal of her Lawsuit.*

Plaintiff claims that "once her 2016 lawsuit was dismissed, Defendant terminated Plaintiff's employment in retaliation for filing the 2016 lawsuit against Defendant[,]" and that "Defendant made the decision to terminate Plaintiff's employment on the same date that Plaintiff voluntarily dismissed her 2016 lawsuit." Dkt. No. 89 at 7 (emphasis in original). However, Plaintiff's dismissal of her 2016 Lawsuit is not protected activity. *See Logan*, 4 F. 4th at 538 (finding that statutorily protected activity for a Title VII retaliation claim requires a complaint that "involve[s] discrimination that is prohibited by Title VII" (cleaned up)).

Nor does the record support that Plaintiff's termination was related in any way to the dismissal of her 2016 Lawsuit. To the contrary, the disciplinary proceedings that resulted in Plaintiff's termination were initiated *before* Plaintiff dismissed her 2016 Lawsuit on July 25, 2018. DSOF ¶¶ 19, 21–22, 24, 26–29. Specifically, the six (6) incidents of Plaintiff's misconduct that gave rise to Plaintiff's termination were reported to Human Resources and Labor Director Lagattuta on June 7 and 12, 2018, and July 6 and 19, 2018, respectively. *Id.* ¶¶ 19, 21–22, 24, 26.

17

Indeed, by July 12, 2018, Plaintiff had already received notice of the charges against her and sat for an investigative interview. *Id.* ¶¶ 28–29. Accordingly, the record supports that Plaintiff was terminated for legitimate, non-retaliatory reasons, and Defendant is entitled to summary judgment on Plaintiff's retaliation claim. *See Williams*, 2025 U.S. App. LEXIS 4303, at *7 (affirming summary judgment on plaintiff's claim for retaliatory discharge where "[t]he record shows that the Postal Service fired Williams from Linwood because it believed she had performed poorly").

### F.   Plaintiff Was Not Subjected to a Hostile Work Environment.

Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim. "To prove that an employment environment was actionably hostile, a plaintiff must show that (1) [s]he was subject to unwelcome harassment; (2) the harassment was based on race (or another protected category); (3) the harassment was severe or pervasive to a degree that altered the conditions of employment and created a hostile or abusive work environment; and (4) there is a basis for employer liability." *Gates v. Bd. of Educ. of the City of Chi.*, 916 F.3d 631, 636 (7th Cir. 2019) (internal quotation marks and citation omitted). To survive summary judgment, Plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Mendenhall v. Mueller Streamline Co.*, 419 F.3d 686, 691 (7th Cir. 2005) (citation omitted). In deciding whether the environment is hostile, courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*

First, Plaintiff cannot show that she was "harassed" by Castronova or anyone else at IWCC. While Plaintiff complains that Castronova engaged in a "rigorous review" of her work, Third Am.

Compl. ¶ 18, receiving feedback from one's supervisor is a far cry from "harassment" under Title VII. *See Patton v. Indianapolis Pub. Sch. Bd.*, 276 F.3d 334, 339 (7th Cir. 2022) (find that plaintiff's claims of "stern and severe criticism" were insufficient to establish a hostile work environment). To the contrary, the record supports that Plaintiff's deficient work performance, as well as Plaintiff's history of incompetence, insubordination, and misconduct, DSOF ¶¶ 6–9, 11–13, required Castronova to more closely supervise Plaintiff. Therefore, even accepting Plaintiff's testimony regarding Castronova's review of Plaintiff's work, *id.* ¶¶ 63–67, the record supports that this degree of supervision was appropriate. *See Igasaki*, 988 F.3d at 958–59 (finding a plaintiff's supervisor's "treatment may have been the result of [plaintiff']s performance: a string of poor reviews, corrective action plans, and suspensions").

Moreover, Plaintiff fails to connect any of her alleged "mistreatment" by Castronova to her race, color, national origin, or any other protected characteristic. Plaintiff testified that no one at IWCC made any derogatory comments about her race, color, or national origin in the years that Plaintiff worked for Castronova. DSOF ¶ 78. Nor was Plaintiff ever subjected to any racial slurs at IWCC. *Id.* ¶ 77. Rather, Plaintiff's complaints describe no more than mere "ordinary tribulations of the workplace," unrelated to Plaintiff's protected characteristics, which do not constitute discrimination as a matter of law. *See Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2455 (2013); *see also Hamm v. Weyauwega Milk Prod., Inc.*, 332 F.3d 1058, 1062, 1065 (7th Cir. 2003) (affirming summary judgment against plaintiff who could not connect work-related disputes to his sex).

Crucially, most of Plaintiff's claims of alleged "mistreatment" by Castronova are based on isolated incidents that allegedly occurred before July 2018. DSOF ¶¶ 71–74, 75–76. As such, Plaintiff's claims regarding these events are barred under the doctrine of *res judicata* and the statute of limitations. *Palka*, 662 F.3d at 437; *Roney*, 474 F.3d at 460. Further, the Court cannot consider

these isolated incidents with respect to Plaintiff's present hostile work environment claim because Plaintiff fails to produce evidence showing that the conduct either continued into the statutory period or was unknown to Plaintiff prior to final judgment in Plaintiff's 2016 Lawsuit. *See Milligan-Grimstad v. Stanley*, 877 F.3d 705, 712–13 (7th Cir. 2017) (holding that a court cannot consider conduct "outside the statute of limitations as part of [a] hostile work environment claim" unless "the alleged conduct forms a single unlawful employment practice falling at least in part within the statutory period"); *Mannie v. Potter*, No. 04 C 1584, 2006 U.S. Dist. LEXIS 114377, at *6–8 (N.D. Ill. June 1, 2006) (granting summary judgment where "the instant case does not include any allegations in support of [plaintiff's] hostile work environment claim that were not included" in plaintiff's previous lawsuit or "not known to plaintiff prior to" final judgment in plaintiff's previous lawsuit, pursuant to *res judicata*).

Moreover, Plaintiff cannot show any harassment severe or pervasive enough to alter the conditions of her employment. Plaintiff's testimony regarding her alleged mistreatment at IWCC, DSOF ¶¶ 63–76, is "insufficient to show a workplace permeated with discriminatory ridicule, intimidation, and insult." *See Luckie v. Ameritech Corp.*, 389 F.3d 708, 714 (7th Cir. 2004). Indeed, Plaintiff's work environment from July 25, 2018, until her termination on September 19, 2018, was "not physically threatening, nor was it openly racist, nor did it unreasonably interfere with [Plaintiff's] performance." *See Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014). Therefore, Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim.

## IV. Conclusion.

For these reasons, Defendant, IWCC, respectfully requests that this Court grant its Motion for Summary Judgment and enter judgment in favor of Defendant and against Plaintiff.

December 5, 2025                          Respectfully submitted,

                                         KWAME RAOUL
                                         Illinois Attorney General

                                         By: /s/ *Maebetty Kirby*
                                         Maebetty Kirby
                                         Assistant Attorney General
                                         Office of the Illinois Attorney General
                                         Government Representation Division
                                         General Law Bureau
                                         115 S. LaSalle Street
                                         Chicago, Illinois 60603
                                         (773) 590-7857
                                         *mary.kirby@ilag.gov*