**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GLADYS APONTE, | Case No. 19 C 5260 |
| Plaintiff, | |
| v. | District Judge Sunil R. Harjani |
| ILLINOIS WORKERS' COMPENSATION COMMISSION, | Magistrate Judge Heather K. McShain |
| Defendant. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 2

I.     Legal Standard. ................................................................................................... 2

II.    Defendant Discriminated Against and Harassed Aponte. .................................. 3

     A.     Defendant Subjected Aponte to Disparate Treatment. ............................ 4

     B.     Castronova's Statements Permit an Inference of Discrimination. .......... 8

     C.     Defendant Subjected Aponte to a Hostile Work Environment. ........... 10

III.    Defendant Retaliated Against Aponte For Her Complaints and Prior Legal Action. ....... 12

IV.    Defendant's Justification for Aponte's Firing is Dishonest. ............................. 14

     A.     Defendant's Explanation for Aponte's Firing Has Shifted Over Time. ............... 14

     B.     Defendant Relied on Incomplete and Biased Factual Determinations to Fire Aponte. ............................................................................................ 15

     C.     Defendant Deviated from Procedure in Firing Aponte. ........................ 17

     D.     Defendant Cannot Avoid Liability By Claiming That CMS Employees Had No Knowledge of Aponte's Protected Characteristics or Protected Activities. .......... 18

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alvarez v. Vill. of Palatine*,
22 C 2463, 2024 WL 4647856 (N.D. Ill. Oct. 31, 2024) ................................................ 6, 10, 11

*Baines v. Walgreen Co.*,
863 F.3d 656 (7th Cir. 2017) ...................................................................................... 17, 18

*Brown v. Chicago Transit Auth.*,
22 C 675, 2022 WL 16856400 (N.D. Ill. Nov. 10, 2022) ..................................................... 12

*Casna v. City of Loves Park*,
574 F.3d 420 (7th Cir. 2009) ................................................................................................ 12

*Coleman v. Donahoe*,
667 F.3d 835 (7th Cir. 2012) ...................................................................................... 4, 6, 7

*Curry v. Menard, Inc.*,
270 F.3d 473 (7th Cir. 2001) .............................................................................................. 8

*de Lima Silva v. Dep't of Corr.*,
917 F.3d 546 (7th Cir. 2019) ...................................................................................... *passim*

*Dirickson v. Intuitive Surgical, Inc.*,
657 F. Supp. 3d 1103 (N.D. Ill. 2023) .............................................................................. 3, 4

*Donley v. Stryker Sales Corp.*,
906 F.3d 635 (7th Cir. 2018) ...................................................................................... 13, 19

*Garcie v. Mayorkas*,
No. 21 C 405, 2023 WL 6388128 (N.D. Ill. Sept. 29, 2023) ........................................... 11, 12

*Grayson v. Cellco P'ship*,
No. 18 CV 06124, 2020 WL 1182660 (N.D. Ill. Mar. 12, 2020) ......................................... 5, 8

*Hasan v. Foley & Lardner LLP*,
552 F.3d 520 (7th Cir. 2008) ............................................................................................... 9

*Hasham v. Cal. St. Bd. of Equalization*,
200 F.3d 1035 (7th Cir. 2000) .............................................................................................. 9

*Higgins v. Lake Cnty. Circuit Court Clerk's Office*,
No. 17-CV-07637, 2021 WL 4206789 (N.D. Ill. Sept. 15, 2021) ................................... 14, 15

*Ismail v. Brennan*,
    654 Fed. Appx. 240 (7th Cir. 2016) ................................................................7, 8, 14

*Johnson v. Mnuchin*,
    No. 14 C 2233, 2018 WL 11468926 (N.D. Ill. Mar. 28, 2018) ................................8

*Joll v. Valparaiso Cmty. Sch.*,
    953 F.3d 923 (7th Cir. 2020) .................................................................3, 9, 10, 14

*Keiju Pu v. Columbia Coll. Chicago*,
    934 F. Supp. 2d 964 (N.D. Ill. 2013) ......................................................................17

*Kelley v. Chicago Transit Auth.*,
    709 F. Supp. 3d 581 (N.D. Ill. 2024) ....................................................................2, 3

*Maier v. United Parcel Serv., Inc.*,
    721 F. Supp. 3d 693 (N.D. Ill. 2024) ..................................................................2, 17

*Malin v. Hospira, Inc.*,
    762 F.3d 552 (7th Cir. 2014) ..................................................................................13

*Mason v. City of Chicago*,
    436 F. Supp. 2d 946 (N.D. Ill. 2006) ......................................................................6

*Odisho v. U.S. Bancorp, Inc.*,
    16 C 11121, 2019 WL 3318180 (N.D. Ill. July 24, 2019) ......................................9

*Ortiz v. Werner Enters., Inc.*,
    834 F.3d 760, 765 (7th Cir. 2016) ..........................................................................3

*Pittner v. Advocate Lutheran Gen.*,
    No. 18-cv-04370, 2021 WL 4459514 (N.D. Ill. Sept. 29, 2021) ............................3

*Reives v. Ill. State Police*,
    29 F.4th 887 (7th Cir. 2022) ..................................................................................2

*Ross v. UChicago Argonne, LLC*,
    No. 18 CV 4200, 2023 WL 2745678 (N.D. Ill. Mar. 31, 2023) ..............................4

*Scalise v. Vill. of McCook*,
    No. 22 C 3767, 2024 WL 3385557 (N.D. Ill. July 11, 2024) ................................19

*Thorsen v. Cmty. Unit Sch. Dist. 300*,
    No. 3:20-CV-50132, 2023 WL 5227146 (N.D. Ill. Aug. 15, 2023) .........................4

*Vega v. Chicago Park Dist.*,
    954 F.3d 996 (7th Cir. 2020) ................................................................................15

**Other Authorities**

Fed. R. Civ. P. 56(a) ................................................................................................................2

Local Rule 56.1(b)(3).............................................................................................................5

iv

## INTRODUCTION

Plaintiff Gladys Aponte ("Aponte" or "Plaintiff") worked at Defendant, the Illinois Workers Compensation Commission ("IWCC" or "Defendant") for over 20 years. Starting in 2014 she transferred to the Information Department in a position that utilized her ability to speak both English and Spanish.

In the Information Department, Aponte's new supervisor Yvonna Castronova ("Castronova") subjected her to a pattern of consistent discriminatory, harassing, and retaliatory conduct. Castronova's conduct was so troubling that Aponte filed an EEOC charge in 2015 raising her discrimination, harassment and retaliation claims. In 2016, Aponte filed a lawsuit asserting her claims. After Aponte filed her charge, she hoped that Castronova's conduct would subside; but instead, Castronova's conduct toward Aponte worsened. Indeed, Castronova subjected Aponte to disparate performance reviews and expectations, applied department policy unfairly to Aponte, and repeatedly made derogatory comments regarding Aponte's accent and ability to speak English. Castronova was so bold as to openly retaliate against Aponte by affirmatively and openly criticizing Aponte for raising her discrimination and harassment complaints in Aponte's performance evaluations and performance documentation.

Castronova's pattern of discrimination and retaliation culminated in the IWCC firing Aponte in September 2018 based on Castronova's biased and factually inaccurate accounts of incidents involving Aponte. Indeed, Defendant relies upon the very disparate performance expectations and reviews that Castronova enforced to contend that it fired Aponte for a legitimate reason. But where, as here, the wrongdoer enforces performance expectations in a disparate manner, a court cannot grant summary judgment on the basis that a plaintiff did not meet those biased expectations.

1

Defendant further contends that Aponte's retaliation claim fails because of the time period between her charge/lawsuit and termination. However, Defendant ignores Castronova's retaliatory acts throughout Aponte's employment and that Aponte continued to report and oppose Castronova's conduct up until the IWCC fired her. Most significantly, Defendant moved to terminate Aponte the *same day* her 2016 lawsuit was dismissed. Aponte has shown sufficient genuine issues of fact that Defendant subjected her to a pattern of discriminatory, harassing, and retaliatory conduct from 2015 through her 2018 termination. Accordingly, this Court should deny Defendant's Motion for Summary Judgment.

## ARGUMENT

### I.     Legal Standard.

Summary judgment is only appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). This standard requires that the Court view the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *Maier v. United Parcel Serv., Inc.*, 721 F. Supp. 3d 693, 715 (N.D. Ill. 2024). Moreover, "the Court does not 'weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true.'" *Id.* Ultimately, summary judgment is improper unless the court finds that no reasonable jury could return a verdict for the non-moving party. *Id.*

Courts evaluating motions for summary judgment on discrimination claims are not limited to the *McDonnell Douglas* framework[1] and "must consider the evidence as a whole." *de*

---

[1] A plaintiff may establish her discrimination claims through the "direct" or "indirect" method of proof. *Reives v. Ill. State Police*, 29 F.4th 887, 891-92 (7th Cir. 2022). Under the *McDonnell Douglas* indirect method framework, a plaintiff must show that: (1) she was a member of a protected class; (2) she was meeting her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated individuals outside of her protected class. *Kelley v. Chicago Transit Auth.*, 709 F. Supp. 3d 581, 587 (N.D. Ill. 2024). Once she satisfies these elements, the

*Lima Silva v. Dep't of Corr.*, 917 F.3d 546, 559 (7th Cir. 2019). A plaintiff "may survive summary judgment [by presenting] evidence that permits a reasonable factfinder to conclude that the employer took the adverse action because of a [protected characteristic]. *Id.* (citing *Ortiz v. Werner Enters.*, Inc., 834 F.3d 760, 765 (7th Cir. 2016)). Thus, summary judgment is improper if the plaintiff's evidence permits "a reasonable juror to infer 'an overall likelihood of discrimination' that merits a trial, not a summary judgment." *Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923, 929 (7th Cir. 2020) (internal citations omitted); *see also Dirickson v. Intuitive Surgical, Inc.*, 657 F. Supp. 3d 1103, 1120 (N.D. Ill. 2023) (noting that the plaintiff's choice to proceed under the *Ortiz* framework guided the court's analysis).

## II.     Defendant Discriminated Against and Harassed Aponte. [2]

This Court must deny Defendant's Motion because the record evidence overwhelmingly supports an inference that Defendant discriminated against Aponte.[3] The Seventh Circuit has

---

burden shifts to the defendant to articulate a legitimate non-discriminatory reason for its actions. *Id.* Thereafter, the burden shifts back to the plaintiff to establish that the defendant's reasoning was pretext for discrimination. *Id.*

[2] Contrary to Defendant's argument, Plaintiff is not administratively barred from asserting her claim of color discrimination. "The test for determining whether an EEOC charge encompasses the claims in a complaint . . . grants the Title VII plaintiff significant leeway." *Pittner v. Advocate Lutheran Gen.*, No. 18-cv-04370, 2021 WL 4459514, at *3 (N.D. Ill. Sept. 29, 2021) (denying defendant's motion to dismiss plaintiff's race discrimination claim despite plaintiff not checking the box for race discrimination on her EEOC charge, reasoning that plaintiff's race discrimination claim was reasonably related to her color discrimination claim) (internal citations and quotations omitted). "A plaintiff may bring Title VII claims if there is a reasonable relationship between the allegations in the EEOC charge and the claims in the complaint, and the claims in the complaint could reasonably have been expected to grow out of an EEOC investigation of the allegations in the EEOC charge . . . . And to be like or reasonably related, the relevant claim and EEOC charge must, at a minimum, describe the same conduct and implicate the same individuals." *Id.* (internal citations and quotations omitted). Here, Aponte's color discrimination claim is based on the same conduct (*i.e.*, Castronova's pattern of racially-motivated misconduct, scrutiny, and targeting) and implicates the same individuals (*i.e.*, Castronova) as Aponte's claim of race discrimination. Aponte therefore has exhausted her administrative remedies and can pursue her color discrimination claim.

[3] Defendant subjected Aponte to a pattern of unlawful discriminatory, harassing, and retaliatory conduct dating back to the filing of her first EEOC charge in 2015. (*See, e.g.*, Pltf. SoF ¶¶ 3-5, 7-14, 16-26). Defendant contends that it is entitled to summary judgment on the basis of any actions occurring before the July 2018 dismissal of Aponte's first lawsuit. (Br. at 10-12.) However, Defendant's treatment of

"identified three broad types of circumstantial evidence that will support an inference of discrimination…": (1) ambiguous conduct or suggestive comments or conduct; (2) better treatment of people similarly situated but for the protected characteristic; and (3) dishonest employer justifications for disparate treatment. *Dirickson v. Intuitive Surgical, Inc.*, 657 F. Supp. 3d 1103, 1121 (N.D. Ill. 2023). Here, almost immediately after Aponte began reporting to Castronova, Castronova launched a campaign of discrimination and harassment against Aponte that was highlighted by Castronova openly making derogatory comments about Aponte's accent (*see* § II(B) *infra*), over-scrutinizing and sabotaging Aponte's work (*see* § II(A) *infra*), and disproportionately disciplining and criticizing Aponte as compared to her colleagues (*id.*). This conduct, coupled with the IWCC's shifting justifications for Aponte's discipline and the long delay in determining whether Aponte should even be fired (*see* § IV *infra*), establishes Defendant's discriminatory motives.

### A. Defendant Subjected Aponte to Disparate Treatment.

The record evidence more than permits a reasonable juror to conclude that Defendant discriminated against Aponte and subjected her to harsher standards than her counterparts in the Information Department. "Whether a comparator is similarly situated is 'usually a question for the fact-finder,' and summary judgment is appropriate only when 'no reasonable fact-finder could find that [a plaintiff has] met their burden on the issue.'" *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012). "The Seventh Circuit has repeatedly emphasized that '[s]imlarly

---

Aponte prior to July 2018 is a significant indicator of the unlawful conduct to which Defendant subjected Aponte. Indeed, prior acts, including time-barred unlawful conduct, are relevant background evidence that can support a timely claim. *See Thorsen v. Cmty. Unit Sch. Dist. 300*, No. 3:20-CV-50132, 2023 WL 5227146, at *2 (N.D. Ill. Aug. 15, 2023) (holding that time-barred discriminatory acts would be considered as background evidence for a timely claim); *Ross v. UChicago Argonne, LLC*, No. 18 CV 4200, 2023 WL 2745678, at *11 (N.D. Ill. Mar. 31, 2023) (holding that a reasonable jury could find conduct severe or pervasive, particularly in light of prior background evidence of discriminatory intent).

situated employees must be directly comparable to the plaintiff in all material respects, yet this is a flexible inquiry with no magic formula.'" *Grayson v. Cellco P'ship*, No. 18 CV 06124, 2020 WL 1182660, at *9 (N.D. Ill. Mar. 12, 2020).

J.P.[4] (Hispanic, lighter brown skin), R.G. (Caucasian), and Y.D. (African-American) worked in the Information Department and reported to Castronova at the time of Aponte's termination. (Pltf. SoF ¶ 2.)[5] These individuals were similarly situated to Aponte, and Defendant treated them more favorably. *Grayson,* 2020 WL 1182660, at *7 (holding that similarly situated individuals generally dealt with the same supervisor, were subject to the same standards and engaged in similar conduct without differentiating or mitigating circumstances).

Indeed, Castronova subjected Aponte to harsher, subjective, and retaliatory performance reviews. (Pltf. SoF ¶¶ 9-10.) Unlike her colleagues, Aponte's reviews contain references to her accented English. (*Id.* ¶¶ 9-11.) English proficiency is not a proper review metric for the IWCC. (*Id.* ¶ 12.) Aponte's reviews also contain personal commentary on Aponte's complaints that Castronova was harassing her, subjecting her to stricter review, and not providing training. (*Id.* ¶ 7.) Castronova criticized Aponte for questioning Castronova's authority and "erroneously" complaining about her treatment and lack of training, and even characterized Aponte's complaints as "belligerent" and "sarcastic." (*Id.* ¶¶ 7-8.) By contrast, the reviews of R.G., J.P. and Y.D. contain constructive feedback framed in the context of the stated review criteria. (*Id.* ¶ 10.)

Moreover, Castronova commended J.P. on several of her performance reviews for handling the additional duties of addressing inquiries by Hispanic callers. (*Id.* ¶ 16.) Castronova

---

[4] Non-party employee names have been anonymized to ensure privacy, as per Plaintiff's Motion to Seal.

[5] "Pltf. SoF" citations refer to Plaintiff's Local Rule 56.1(b)(3) Statement of Additional Material Facts, filed contemporaneously with this Memorandum of Law.

never gave Aponte similar praise despite Aponte also assisting Hispanic customers as a Spanish-speaking ICT. (*Id.* ¶¶ 7-10.) A simple comparison of Aponte's reviews to those of her co-workers demonstrates that Castronova provided constructive and appropriate feedback to Aponte's co-workers but directed subjective criticism of Aponte's accent and work ethic toward Aponte. (*Id.* ¶¶ 7-10, 16.) This disparity allows an inference of discrimination. *See Alvarez v. Vill. of Palatine*, 22 C 2463, 2024 WL 4647856, at \*10 (N.D. Ill. Oct. 31, 2024) (finding a question of fact precluding summary judgment where similarly situated individuals consistently received higher subjective performance ratings than the plaintiff).

Castronova's stricter review of Aponte also extended beyond performance reviews. On a daily basis, Castronova subjected Aponte's work to a second level of review that no other co-workers were required to undergo. (Pltf. SoF ¶ 5.) Castronova also forbade other employees from speaking with Aponte, even though Aponte needed assistance to meet Castronova's additional level of review that she applied only to Aponte. (*Id.* ¶ 6.) *See Mason v. City of Chicago*, 436 F. Supp. 2d 946, 955 (N.D. Ill. 2006) (finding that the failure to provide requested assistance to an employee was evidence that legitimate expectations were applied in a disparate manner).

Moreover, Castronova did not provide Aponte with the standard work materials, and Castronova continually enforced policy against Aponte in a disparate manner. For example, Castronova (1) required that Aponte submit late arrival slips but did not require this of others (Pltf. SoF ¶ 17), (2) afforded others preferential scheduling to maximize their time off (*Id.* ¶ 18), and (3) unreasonably rejected Aponte's time-off requests but not those of others. (*Id.* ¶ 19.) Castronova also removed Aponte's label writer and punch holder from her desk. (*Id.* ¶21; Def. SoF ¶¶ 75-76.) All other ICTs in the office had their own label writers and punch holders at their desks. (Pltf. SoF ¶ 21) Castronova's selective enforcement of policy and procedure further

evidences her differential treatment of Aponte. *See Coleman,* 667 F.3d 835, 857 ("[S]elective enforcement of a rule calls into question the veracity of the employer's explanation.").

Three disciplinary incidents highlight Defendant's disparate treatment of Aponte. First, J.P. (who has lighter skin than Aponte and did not speak with an accent) received only an oral reprimand after engaging in a verbal altercation with Aponte in 2017. (Pltf. SoF ¶¶ 13-15; Pltf. Resp. to Def. SoF ¶ 52.) By contrast, Defendant suspended Aponte for 30 days for the same incident, despite Aponte's report that J.P. physically threatened her. (Pltf. SoF ¶¶ 13-15.) Defendant also suspended Aponte, Robin Coleman, and Sherry Tate (all women of darker complexion) after they allegedly made derogatory comments regarding another employee. (Pltf. SoF ¶ 3.) However, both Coleman and Tate stated that Aponte was not even present during this interaction. (*Id.*) In June 2018, Castronova emailed the ICTs reprimanding an unidentified employee for their handling of a phone call the day prior. (*Id.* ¶ 22.) Although both Aponte and J.P. were responsible for answering phones on the day in question, Castronova responded to R.G. stating "[b]elieve me, I know who it was." (*Id.*) Ultimately, Defendant fired Aponte for discriminatory reasons that were pretextual and not supported by Aponte's actual performance. In all of these instances, Defendant unequally applied discipline to Aponte. *See Ismail*, 654 Fed. Appx. at 245 ("Evidence that similarly situated individuals were disciplined less harshly permits an inference that an employer selectively enforced its policies and establishes a question of fact as the employer's stated reason for termination.").

Defendant's brief relies heavily on the notion that Aponte's claims fail because she cannot show that she was meeting Defendant's performance expectations under the *McDonnell Douglas* framework. However, Plaintiff is proceeding under the *Ortiz* framework. What's more, Defendant had disparate performance expectations and the same individuals who discriminated

and retaliated against Aponte enforced these disparate expectations. In such cases, "where the issue is whether the plaintiff was singled out for discipline based on a prohibited factor, 'it makes little sense … to discuss whether she was meeting her employer's reasonable expectations.'" *Grayson v. Cellco P'ship*, No. 18 CV 06124, 2020 WL 1182660, at *5 (N.D. Ill. Mar. 12, 2020) (citing *Curry v. Menard, Inc.*, 270 F.3d 473, 478 (7th Cir. 2001)); *see also Ismail v. Brennan*, 654 Fed. Appx. 240, 243 (7th Cir. 2016) (holding that the legitimate expectations factor was "unnecessary where, as here, 'the issue is whether the plaintiff was singled out for discipline based upon a prohibited factor . . .' or where 'the people judging [the plaintiff's] performance were the same accused of discriminating against her'").

The cumulative weight of the evidence demonstrates that Defendant held Aponte to a harsher standard than her co-workers. (Pltf. SoF ¶¶ 5-11, 13, 15, 16-20.) Indeed, Castronova subjected Aponte's work to an additional level of review; instructed other IWCC employees not to speak with or help Aponte; criticized Aponte on her performance reviews for subjective, trivial issues, and for complaining of harassment; and made it more difficult for Aponte to use her time off and early dismissal opportunities. (*Id.*) Summary judgment cannot be granted based on Aponte's purported failure to meet these disparate expectations. *See Johnson v. Mnuchin*, No. 14 C 2233, 2018 WL 11468926, at *6, n.5 (N.D. Ill. Mar. 28, 2018) (denying summary judgment on a racial discrimination claim and holding that the plaintiff need not prove he was meeting the employer's legitimate expectations where "those who evaluated plaintiff's conduct are those accused of discrimination").

### B. Castronova's Statements Permit an Inference of Discrimination.

The discriminatory animus towards Aponte's race and Dominican heritage is clearly evidenced by Castronova's repeated comments regarding Aponte's accent and ability to speak English. "A remark or action by a decision-maker reflecting unlawful animus may be evidence

of his or her attitudes more generally." *Joll*, 953 F.3d at 935 (noting that "[i]n considering a defendant's attempt to neuter a sexist or racist comment as a stray remark, a court deciding a summary judgment motion must keep in mind its duty to consider the evidence as a whole and to do so in the light most favorable to the non-moving party") Such comments are relevant regardless of when Castronova made them. *Hasan v. Foley & Lardner LLP*, 552 F.3d 520, 528 (7th Cir. 2008) (holding that, while the recency of discriminatory comments is a factor in evaluating whether they "build a total picture of discrimination," courts "may not view recency alone as the decisive factor")

While supervising Aponte, Castronova made written comments and verbal statements demonstrating an animus toward Aponte's accented English and Dominican heritage. On Aponte's 2017 performance review, Castronova stated that Aponte should take "English as a second language (ESL) class[es]." (Pltf. SoF ¶ 9.) This was despite that an employee's English competency was not a standard topic for performance reviews at the IWCC. (*Id.* ¶ 12) Castronova also described Aponte's English as broken and accented to other employees and at one time stated to Aponte "you can't even speak [English]" and "you can't even say this." (*Id.* ¶ 11.)

These comments demonstrate a discriminatory animus because Aponte's accented English is directly traceable to her Dominican heritage. *See Hasham v. Cal. St. Bd. of Equalization*, 200 F.3d 1035, 1050 (7th Cir. 2000) (finding that a decisionmaker's derogatory comments regarding an employee's accent and the supervisor's ability to understand the employee were direct evidence of national origin discrimination); *Odisho v. U.S. Bancorp, Inc.*, 16 C 11121, 2019 WL 3318180, at *7 (N.D. Ill. July 24, 2019) (references to a plaintiff's communication issues "could reasonably be construed as 'code' for national origin").

9

Summary judgment is improper if the plaintiff's evidence permits "a reasonable juror to infer 'an overall likelihood of discrimination' that merits a trial[.]" *Joll*, 953 F.3d at 929 (internal citations omitted). Aponte has put forth more than enough evidence under the *Ortiz* framework supporting that Defendant subjected her to a pattern of harassing and discriminatory conduct during her time in the Information Department based her complexion and Dominican heritage. Moreover, as noted above, previous courts in this District have acknowledged that the kind of evidence Aponte has presented could allow an inference of discrimination. Thus, under either the *Ortiz* or *McDonnell Douglas*[6] framework, she has created triable issues of fact supporting her discrimination claims, and this Court must deny Defendant's Motion.

## C. Defendant Subjected Aponte to a Hostile Work Environment.

The evidence discussed above further demonstrates that Defendant subjected Aponte to a years-long pattern of severe and unwelcome behavior based on Aponte's race, color, and national origin. A claim for discrimination based on a hostile work environment requires that a plaintiff show: (1) that she was subject to unwelcome harassment; (2) the harassment was based on her membership in a protected category; (3) the harassment was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability. *Alvarez v. Vill. of Palatine*, No. 22 C 2463, 2024 WL 4647856, at \*11 (N.D. Ill. Oct. 31, 2024). Whether conduct is sufficiently severe or pervasive "depends on 'the severity of the allegedly discriminatory conduct, its frequency, whether it is

---

[6] To the extent the Court elects to review Defendant's Motion within the *McDonnell Douglas* framework, the evidence identified in Section III shows that Aponte has satisfied her *prima facie* case. She is a member of a protected class (darker complexion, Dominican and Hispanic), Defendant terminated her employment, and Defendant treated similarly situated individuals more favorably than Aponte. As discussed in Section II, Aponte need not show that she was meeting Defendant's discriminatory performance expectations. Moreover, the evidence identified in Section III shows that Defendant's motivation for Aponte's termination was pretextual.

10

physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with the employee's work performance." *Id.* "Crucially, '[w]hether harassment is so severe or pervasive as to constitute a hostile work environment is generally a question of fact for the jury.'" *Id.* at *12 (finding that where the evidence established a pattern of condescending and abusive behavior directed towards the plaintiff that summary judgment was improper).

Here, Defendant systematically criticized and supervised Aponte's work performance, while it did not do so to other members of her department. *See* Section II(A) *supra*. As outlined above, Castronova subjected Aponte to additional levels of scrutiny, deprived her of work materials and training, and criticized Aponte (in documented performance reviews) for questioning her authority and complaining of harassment based on her ethnicity. (Pltf. SoF ¶¶ 5-11.) Castronova also openly made derogatory comments about Aponte's accent, both to other IWCC employees and directly to Aponte. (*Id.* ¶ 11.) Castronova went so far as to tell Aponte "you can't even speak" and "you can't even say this," and Castronova instructed her subordinates not to interact with Aponte. (*Id.*)

Taken together, Castronova's pattern of misconduct was sufficiently severe and pervasive to interfere with Aponte's work performance. Indeed, at the very end of her employment, Aponte was so distraught that she felt the need to record Castronova as proof of her consistent harassment. (Pltf. SoF ¶ 27.) This highlights the impact that Castronova's behavior had on Aponte. (*Id.*) Significantly, Castronova engaged in this harassing conduct in front of other employees, further evidencing a hostile work environment. *Garcie v. Mayorkas*, No. 21 C 405, 2023 WL 6388128, at *9 (N.D. Ill. Sept. 29, 2023) (denying defendant's motion for summary judgment as to plaintiff's hostile work environment based on racially-motivated comments about plaintiff's accent and uttered in front of his colleagues, reasoning that such conduct may not rise

to the level of severe and pervasive conduct, but concluding that "such a judgment call fundamentally belongs to the jury"). Thus, this Court should deny Defendant's Motion with respect to Aponte's hostile work environment claim.

## III. Defendant Retaliated Against Aponte For Her Complaints and Prior Legal Action.

Throughout her employment, Aponte continually reported that Castronova was harassing her and retaliating against her. Indeed, Defendant does not dispute that Aponte engaged in a statutorily protected activity in filing her 2015 charge and 2016 lawsuit or that she suffered an adverse action when Defendant fired her. (Br. at 20-23.) Defendant contends that the time period between these events warrants summary judgment. (*Id.*) It does not.

Aponte repeatedly opposed harassing and discriminatory conduct throughout her employment. (Pltf. SoF ¶¶ 4, 7, 27; Def. SoF ¶¶ 9, 14-15, 35; Pltf. Resp. to Def. SoF ¶ 79.) Castronova immediately engaged in retaliatory conduct when, in Aponte's performance reviews, she openly criticized Aponte for complaining, thus establishing Castronova's retaliatory animus. (Pltf. SoF ¶ 7.) *See Brown v. Chicago Transit Auth.*, 22 C 675, 2022 WL 16856400, at *6 (N.D. Ill. Nov. 10, 2022) (noting that an allegation that the defendant criticized the plaintiff's protected activity contributed to a picture of an ongoing pattern of retaliation).

What's more, in investigating the July 19, 2018 incident between Castronova and Aponte, both Castronova and Darren Crowder noted that Aponte again complained that Castronova was harassing her. (Pltf. SoF ¶ 27; Def. SoF ¶ 26.) These complaints establish that Aponte engaged in protected activity just *days* before Defendant initiated the process to fire her. *See Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009) (holding that informal complaints may constitute a protected activity for the purposes of a retaliation claims.)

In addition, after Aponte filed her 2015 discrimination charge, the tenor of her performance reviews shifted to petty criticism of matters not within the scope of a proper

performance review. (Pltf. SoF ¶¶ 4-12.) Following her charge and pursuit of her previous lawsuit, Defendant also subjected Aponte to differential treatment that her co-workers did not experience. (*See* Section II *supra.*) This pattern of conduct culminated in Aponte's termination and bridges the gap between her original protected activity and her termination. *See Malin v. Hospira, Inc.*, 762 F.3d 552, 560 (7th Cir. 2014) (finding that a defendant's repeated acts of retaliation during a three-year period from when she complained of discrimination and when she was demoted was sufficient circumstantial evidence bridging the causation gap and requiring that the jury decide the issue).

Significantly, Castronova and Lagattuta initiated the final termination process *the same day* Aponte's previous lawsuit was voluntarily dismissed. The suspicious timing of Aponte's firing reinforces the inference of retaliatory animus. (Pltf. SoF ¶¶ 31-32.) Indeed, the court dismissed Aponte's lawsuit on July 26, 2018, and *that same day*, Lagattuta requested CMS Labor's approval to terminate Aponte. (*Id.*) Lagattuta could not recall wanting to fire Aponte before July 26, 2018. (*Id.* ¶ 32.) In sum, (1) Aponte suffered retaliatory and disparate conduct following the filing of her initial discrimination Charge in 2015, (2) that conduct continued through the end of her employment, (3) Castronova criticized Aponte for her complaints on multiple occasions, and (4) Aponte continued to oppose this unlawful conduct mere days before Defendant initiated the process to fire her. This evidence combined with the questionable motivations for her termination (*see* Section IV *infra*), is sufficient for a jury to find in Aponte's favor. *See Donley*, 906 F.3d at 638 (finding that suspicious timing and questions as to legitimacy of the stated reason for termination precluded summary judgment on a relation claim).

13

## IV.     Defendant's Justification for Aponte's Firing is Dishonest.

Defendant's stated motivation for Aponte's firing is dishonest.[7] Indeed, (1) Defendant's stated reasoning has evolved over time, (2) Defendant relied upon biased and incomplete information to conclude that Aponte violated IWCC policies warranting termination, and (3) Defendant deviated from procedure in seeking approval for Aponte's termination. This is sufficient contextual evidence for a jury to find that the IWCC's explanation of her termination is "fishy enough" to support an inference that the real reason for her firing was discrimination and retaliation. *See Ismail*, 654 Fed. Appx. at 245.

### A.     Defendant's Explanation for Aponte's Firing Has Shifted Over Time.

The final justification for Aponte's firing is dishonest because it was workshopped so that CMS would rubberstamp its approval. An employer's dishonesty in defending or explaining an employment decision can support an inference of illegal discrimination. *Joll*, 953 F.3d at 932. A defendant's evolving explanation for an adverse action can support an inference of pretext. *See de Lima Silva*, 917 F.3d at 563 (holding that the jury could infer pretext where the rationale for discharge evolved from the original justification by adding further grounds for dismissal); *Higgins v. Lake Cnty. Circuit Court Clerk's Office*, No. 17-CV-07637, 2021 WL 4206789, at *8 (N.D. Ill. Sept. 15, 2021) (stating that pretext could be inferred where contemporaneous records supporting termination differed from stated motivations in litigation).

Defendant initially sought to fire Aponte based on her alleged conduct in June and July 2018, and because termination was the next step in progressive discipline. (Pltf. SoF ¶¶ 32-33,

---

[7] While Plaintiff does not dispute Paragraphs 6-9, 13, 36-38, 40, and 43 of Defendant's Statement of Facts, Plaintiff does not concede Defendant's contention that Plaintiff's supposed performance issues were the legitimate reason for her termination. Plaintiff concedes only that Defendant's witnesses—most notably, Castronova—stated that Plaintiff's performance issues warranted termination, and that Castronova provided information to CMS to support this position. (Def. SoF ¶¶ 6-9, 13, 36-38, 40, 43; Pltf. SoF ¶¶ 30, 32-33) ("Castronova prepared most of the information containing in the investigative packet, which the IWCC provided to CMS so they could make their decision on Aponte's employment.")

14

35-37; Def. SoF ¶¶ 28-29, 38.) This initially included an allegation that Aponte left work early on July 3, 2018 without approval. (Pltf. SoF ¶¶ 32, 38, 40.) Over the course of the next month, the motivations for Aponte's termination evolved to warrant approval from CMS. (*Id.* ¶¶ 32-40.) For example, Defendant removed the July 3, 2018 incident from its termination request, and CMS employee Rausch commented that a number of the charges against Aponte were less serious than characterized. (*Id.* ¶¶ 35, 37, 40.) Rausch also provided written revisions to improve the narrative supporting termination and eliminate Defendant's personal commentary. (*Id.* ¶ 37.) Even more, CMS's recommendation stated that termination was justified based on the "totality of the circumstances" and Aponte's alleged conduct towards her supervisor. (*Id.* ¶ 35.) Now Defendant contends that Aponte's termination was warranted because of the entirety of Plaintiff's previous disciplinary history, despite the termination documents substantively addressing only the incidents occurring in June and July 2018. (Br. at 22-23; Pltf. SoF ¶¶ 32-33, 35-37; Def. SoF ¶¶ 28-29, 38.) This demonstrates a shifting narrative that calls into question Defendant's legitimate explanation for firing Aponte and supports an inference of discrimination. *See Higgins,* 2021 WL 4206789, at *8.

## B. Defendant Relied on Incomplete and Biased Factual Determinations to Fire Aponte.

Defendant's justification for firing Aponte is also questionable because it relied on biased and incomplete facts to conclude that she violated policies warranting termination. Flagrant factual inaccuracies in an employer's investigation allow a jury to find pretext. *Vega v. Chicago Park Dist.*, 954 F.3d 996, 1005 (7th Cir. 2020). Moreover, an employer's inconsistency in evaluating the credibility of employees during an investigation can support an inference of discrimination. *de Lima Silva,* 917 F.3d at 564 (noting that "[i]t is defendants' prerogative to

evaluate the veracity of their employee's narratives, but where defendants do so inconsistently, red flags arise").

While investigating the grounds for Aponte's firing and alleged previous misconduct, Defendant credited witnesses with demonstrated biases towards Aponte and disregarded witnesses corroborating Aponte's version of events. For example, after the August 2017 altercation with J.P., Aponte claimed J.P. made a threatening physical gesture toward her, and J.P. claimed Aponte yelled and cursed at her. (Pltf. SoF ¶ 13.) Defendant adopted J.P.'s version of events and suspended Aponte not only for engaging in a verbal altercation, but also for verbally abusing a colleague and misrepresenting that a colleague physically threatened her. (*Id.* ¶ 15) Defendant's investigation into this incident disregarded both Aponte's and Linda Freeman's statements. (*Id.* ¶¶ 14-15.) Freeman reported that Castronova was to blame for picking on Aponte and arguing with employees in the office. (*Id.* ¶ 14.) Instead of crediting the testimony of Freeman—a neutral third party—Defendant's investigative file described Freeman's statement as a "rant." (*Id.*)

Similarly, CMS supported Aponte's firing based upon Aponte's alleged conduct towards Castronova, *i.e.*, Aponte allegedly referring to Castronova in a derogatory manner and getting within five inches of Castronova. (Def. SoF ¶¶ 32-33.) Aponte denied making any derogatory comments. (Pltf. SoF ¶ 28.) Freeman stated that the interaction occurred when Castronova waited for Aponte to exit the bathroom and then approached Aponte where she could not see her or avoid accidental close contact. (Pltf. SoF ¶ 25.) Defendant again chose not to credit a neutral third-party. Finally, after the July 18, 2018 incident between Aponte and Castronova, both Castronova and D.C. reported that Aponte complained she was being harassed. However, Defendant again took no action to investigate Aponte's allegations. (Pltf. SoF ¶ 26; Def. SoF ¶

26.) Instead, Defendant relied on Castronova's and D.C.'s statements to conclude that Aponte violated policy warranting termination. (Pltf. SoF ¶¶ 26, 32-40; Def. SoF ¶ 26.) *See Keiju Pu v. Columbia Coll. Chicago*, 934 F. Supp. 2d 964, 971 (N.D. Ill. 2013) (finding an issue of fact as to legitimate expectations where the employer relied upon the subjective evaluation of the supervisor to conclude that the employee was underperforming).

These choices and credibility decisions call into question Defendant's motivations for terminating Aponte and should be evaluated by a jury. *See Maier*, 721 F. Supp. 3d at 726 ("[w]hen an employer's response is factually wrong in a self-serving way on a material fact, the choice between treating it as an honest mistake or a deliberate falsehood is ordinarily a choice for a jury at trial, not for summary judgment.").

### C.      Defendant Deviated from Procedure in Firing Aponte.

Finally, Defendant's justification for firing Aponte is suspicious because Defendant deviated from standard procedure in seeking approval for termination. An employer's departure from internal procedures and standard practices in terminating an employee gives rise to an inference that the stated reason for termination is dishonest. *See id.* at 719 (finding that an employer's departure from the standard interview questions to ask different questions of different genders was evidence supporting pretext); *Baines v. Walgreen Co.*, 863 F.3d 656, 664 (7th Cir. 2017) ("An employer's unusual deviation from standard procedure can serve as circumstantial evidence of pretext.").

The process for terminating Aponte differed significantly from standard procedure. Rausch reviewed Defendant's disciplinary memorandum in early August and provided written revisions. (Pltf. SoF ¶¶ 35, 37.) Rausch's revisions indicated that Defendant did not follow standard policy and procedure in memorializing the grounds for Aponte's termination. Rausch further instructed Defendant to lessen its emphasis on the *trivial reasons* it cited in support of

17

Aponte's firing, and to "steer away from any narrative" in its termination papers. (Pltf. SoF ¶¶ 35, 37.) Based upon this feedback, Defendant had to revise its termination papers to remove personal commentary and interpretations. (*Id.*) *See Baines*, 863 F. 3d at 664.

Moreover, Rausch indicated that she needed additional time beyond the standard 7-10 days for final review because of the numerous discussions CMS and Defendant had about the case. (Pltf. SoF ¶¶ 30, 35-39.) Indeed, Rausch's review took nearly *double* the standard time. Indeed, Rausch received the final discharge packet on August 31, 2018, and Defendant did not tell Aponte she was fired until September 17, 2018. (*Id.* ¶¶ 34, 38.) It is particularly suspicious that a state agency that reviews over 450 proposed disciplinary actions per year, would have "a lot of discussions about" and take nearly twice its standard time to review the firing of an employee Defendant describes as having "a lengthy history of misconduct" and "consistently poor work performance[.]" (Pltf. SoF ¶¶ 29-30, 35-39; Br. at 6, 14.)

These facts show that Defendant and CMS deviated from their standard practices in terminating Aponte and such differences are sufficient to permit an inference of pretext. *See Baines*, 863 F.3d at 664.

### D.     Defendant Cannot Avoid Liability By Claiming That CMS Employees Had No Knowledge of Aponte's Protected Characteristics or Protected Activities.

Defendant cannot prevail on summary judgment by claiming that neither Rausch nor Alderman had knowledge of Aponte's protected activities or protected characteristics. (Br. at 8-9, 21-23.) *Castronova* committed the discriminatory and retaliatory actions, and *Castronova* supplied most of the information on which Defendant relied to conclude that Aponte had committed terminable offenses. (*Id.*; Pltf. SoF ¶ 33.) *Castronova* had knowledge of Aponte's protected characteristics and indisputably had knowledge of Aponte's protected activity, as she

criticized Aponte's complaints in her performance reviews and signed a declaration in support of Defendant's motion for summary judgment in the 2016 lawsuit. (Pltf. SoF ¶¶ 4, 7; Def. Ex. 2.)

CMS based its conclusions entirely on the information it received from Defendant, and most notably, *Castronova*. To be sure, CMS did not conduct its own investigation into Aponte's alleged wrongdoing, interview any witnesses, or review any documents outside of those Defendant prepared. (Pltf. SoF ¶¶ 30, 32-36.) In this circumstance, Defendant cannot shield itself from liability by claiming CMS could not have discriminatory or retaliatory animus. *See Donley v. Stryker Sales Corp.*, 906 F.3d 635, 639 (7th Cir. 2018) (finding that the employer could not avoid liability for retaliation based on a decision maker's lack of knowledge where the individual with retaliatory animus provided the decision maker with factual information); *Scalise v. Vill. of McCook*, No. 22 C 3767, 2024 WL 3385557, at *10 (N.D. Ill. July 11, 2024) (denying summary judgment where the plaintiff presented sufficient evidence that a discriminatory actor motivated the decision maker to terminate the plaintiff for nominally legitimate reasons).

## CONCLUSION

Plaintiff Gladys Aponte has set forth facts that are sufficient to allow a jury to find in her favor on her discrimination, hostile work environment and retaliation claims. Thus, Defendant has failed to establish that there are no genuine issues of material fact, nor that it is entitled to judgment as a matter of law, and this Court must deny Defendant's Motion for Summary Judgment.

DATED: January 5, 2026                Respectfully submitted,

GLADYS APONTE


By: */s/ James P. Nasiri*
      One of Her Attorneys

Katherine Mendez
kmendez@seyfarth.com
Michael J. Cederoth
mcederoth@seyfarth.com
James P. Nasiri
jnasiri@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive
Suite 8000
Chicago, Illinois 60606-6448
Telephone:  (312) 460-5000
Facsimile:  (312) 460-7000

20

## CERTIFICATE OF SERVICE

I, Katherine Mendez, an attorney, hereby certify that on January 5, 2026 I caused a copy of the foregoing **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** to be filed via the Court's electronic filing system which will serve notification of such filing to all counsel of record.

*/s/ James P. Nasiri*
One of Defendant's Attorney

21