**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Gladys Aponte, | |
| Plaintiff, | No. 19 C 5260 |
| v. | |
| Illinois Workers' Compensation Commission, | Judge Sunil R. Harjani |
| Defendant. | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS
<u>MOTION FOR SUMMARY JUDGMENT</u>**

<u>TABLE OF CONTENTS</u>

I.   Introduction and Summary of Argument ...................................................................1

II.  Argument ..................................................................................................................2

    A.  Plaintiff's Response Fails to Comply with the Local Rules ................................2

        1.  *The Court Should Deem Defendant's Facts Admitted Where Plaintiff Fails to Properly Respond Under Local Rule 56.1(b)(2)* .......................................3

        2.  *The Court Should Disregard Plaintiff's Noncompliant Statements of Additional Facts* ...............................................................................................4

    B.  Plaintiff's Discrimination and Retaliation Claims that Arose Prior to July 4, 2018, are Barred. ...............................................................................................5

    C.  Plaintiff's Claim for Color Discrimination is Barred by her Failure to Exhaust her Administrative Remedies. .................................................................................6

    D.  No Reasonable Jury Could Find Plaintiff's Termination was Discriminatory .................7

        1.  *Plaintiff Fails to Sufficiently Challenge the Legitimacy of IWCC's Disciplinary Proceedings Against Plaintiff* ....................................................8

        2.  *Defendant's Reasons for Plaintiff's Termination Have Never "Shifted."* ..............10

        3.  *Defendant Did Not Deviate from Standard Procedure* ............................................12

i

4.  *Plaintiff's Allegations Regarding "Comments" About Her Accent or English-Speaking Ability Cannot Defeat Summary Judgment* ...............................................13

5.  *Plaintiff's Allegations of "Disparate Treatment" by Castronova Cannot Defeat Summary Judgment* ...............................................14

E.  No Reasonable Jury Could Find Plaintiff's Termination was Retaliatory ......................16

F.  Defendant is Entitled to Summary Judgment on Plaintiff's Claim for Hostile Work Environment. ...............................................18

III.  Conclusion ...............................................20

## TABLE OF AUTHORITIES

*Anderson v. Iacullo*, 963 F. Supp. 2d 818 (N.D. Ill. 2013)...............................................4

*Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866 (7th Cir. 2016) ...........................10

*Barnes-Staples v. Carnahan*, 88 F.4th 712 (7th Cir. 2023) ...............................................9

*Bonte v. U.S. Bank, N.A.*, 624 F.3d 461 (7th Cir. 2010) ...............................................19

*Brown v. Advoc. S. Suburban Hosp.*, 700 F.3d 1101 (7th Cir. 2012) ...................................18

*Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006) ...............................................4

*Castro v. DeVry Univ., Inc.*, 786 F.3d 559 (7th Cir. 2015) ...............................................10

*Delapaz v. Richardson,* 634 F.3d 895 (7th Cir. 2011)...............................................3

*Eassa v. Brennan*, No. 17 CV 812, 2019 U.S. Dist. LEXIS 22407 (N.D. Ill. Feb. 12, 2019) ...............................................14

*Eaton v. J.H. Findorff & Son, Inc.*, 1 F.4th 508 (7th Cir. 2021)...............................................4

*Everett v. Cook County*, 655 F.3d 723 (7th Cir. 2011) ...............................................12

*Fane v. Locke Reynolds, LLP*, 480 F.3d 534 (7th Cir. 2007) ...............................................18

*Flint v. City of Belvidere*, 791 F.3d 764 (7th Cir. 2015)...............................................2–3

*Gamble v. Cnty. of Cook*, 106 F.4th 622 (7th Cir. 2024)...............................................15

*Geier v. Medtronic, Inc.*, 99 F.3d 238 (7th Cir. 1996)...............................................13

*Gross v. Town of Cicero, Ill.*, 619 F.3d 697 (7th Cir. 2010)............................................4

*Harmon v. Gordon*, 712 F.3d 1044, 1053 (7th Cir. 2013)..............................................6

*Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013)..........................................................9

*Igasaki v. Ill. Dep't of Fin. & Prof'l Regulation*, 988 F.3d 948 (7th Cir. 2021) .................. passim

*Kidwell v. Eisenhauer*, 679 F.3d 957 (7th Cir. 2012) ...................................................16

*Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868 (7th Cir. 2000).......................................3

*Lohmeier v. Gottlieb Mem'l Hosp.*, No. 24-1470, 2025 U.S. App. LEXIS 20747 (7th Cir. Aug. 14, 2025) ......................................................................12–13

*Luckie v. Ameritech Corp.*, 389 F.3d 708 (7th Cir. 2004) ...................................................20

*Malec v. Sanford*, 191 F.R.D. 581 (N.D. Ill. 2000) ...................................................3, 4

*Mannie v. Potter*, No. 04 C 1584, 2006 U.S. Dist. LEXIS 114377 (N.D. Ill. June 1, 2006)..........................................................6, 19, 20

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ...................................................7

*Milligan-Grimstad v. Stanley*, 877 F.3d 705 (7th Cir. 2017)..............................................6, 19, 20

*Oest v. Illinois Dep't of Corrections*, 240 F.3d 605 (7th Cir. 2001)............................................16

*Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016)...................................................2

*Palka v. City of Chi.*, 662 F.3d 428 (7th Cir. 2011)........................................................5

*Paterakos v. City of Chicago*, No. 24-1567, 2025 U.S. App. LEXIS 20419 (7th Cir. Aug. 12, 2025) ......................................................................16

*Petty v. City of Chi.*, 754 F.3d 416 (7th Cir. 2014)........................................................4

*Roney v. Ill. Dep't of Transp.*, 474 F.3d 455 (7th Cir. 2007)...................................................5

*Saud v. Depaul Univ.*, 154 F.4th 563 (7th Cir. 2025) ...................................................9–10, 11

*Scheidler v. Indiana*, 914 F.3d 535 (7th Cir. 2019) ...................................................17, 18

*Schuster v. Lucent Techs., Inc.*, 327 F.3d 569 (7th Cir. 2003).........................................................11

*Stevo v. Frasor*, 662 F.3d 880 (7th Cir. 2011) ............................................................................3

*Thomas v. Christ Hosp. & Med. Ctr.*, 328 F.3d 890, 892-93 (7th Cir. 2003)................................8

*Thompson v. Fairmont Chi. Hotel*, 525 F. Supp. 2d 984 (N.D. Ill. 2007)..................................6–7

*Tomanovich v. City of Indianapolis*, 457 F.3d 656 (7th Cir. 2006)................................................17

*Vance v. Ball State Univ.*, 133 S. Ct. 2434 (2013)........................................................................20

*Williams v. DeJoy*, No. 24-2272, 2025 U.S. App. LEXIS 4303 (7th Cir. Feb. 25, 2025).............8

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Gladys Aponte, | |
|       Plaintiff, | No. 19 C 5260 |
|   v. | |
| Ill. Workers' Compensation Commission, | Judge Sunil R. Harjani |
|       Defendant. | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS
<u>MOTION FOR SUMMARY JUDGMENT</u>**

## I.    Introduction and Summary of Argument

Plaintiff's employment at IWCC was terminated for legitimate reasons, and no reasonable jury could find that Plaintiff was subjected to race, color, or national origin discrimination, or retaliation for engaging in protected activity. Def.'s Mem. in Support of its Mot. for Summ. J., Dkt. No. 185 [hereinafter Def. MSJ]. Plaintiff's Response fails to identify a genuine issue of material fact that would defeat summary judgment. Plaintiff ignores her own workplace misconduct and fails to substantively address Defendant's legitimate reasons for its actions. Instead, she attacks the character of her supervisor, Castronova—who was also born outside the United States and adopted English as a second language, Pl. Resp. to Def. LR 56.1 Statement of Facts ¶ 61, Dkt. No. 189 [hereafter Pl. Resp. to DSOF]. Specifically, Plaintiff argues that that Castronova "launched a campaign of discrimination and harassment against [Plaintiff] that was highlighted by Castronova openly making derogatory comments" about her "accent" and "English-speaking ability," "over-scrutinizing and sabotaging her work," and "disproportionately disciplining and criticizing her as compared to her colleagues." Pl.'s Mem. of L. in Opp'n to Def.'s Mot. for Summ. J. 9, Dkt. No. 188 [hereinafter Resp.]. However, the record demonstrates that Plaintiff's accusations against Castronova are baseless.

Plaintiff's Response fails to comply with Local Rule 56.1 and fails to identify a genuine issue of material fact for trial. Plaintiff violated IWCC's policies, culminating in her termination under the Collective Bargaining Agreement ("CBA") governing progressive discipline. Pl. Resp. to DSOF ¶¶ 10–12, 18–29, 34–38. Specifically, Plaintiff was terminated for six instances of misconduct that were reported by multiple individuals and fully investigated by IWCC. *Id.* ¶¶ 18–29, 34–38. Plaintiff was given a full opportunity to respond to the allegations against her. *Id.* ¶¶ 29, 34–35. Significantly, Plaintiff has admitted to several of the actions that gave rise to her termination. *Id.* ¶¶ 18, 20, 23, 25. Plaintiff's termination was also reviewed by CMS, a third party, which determined that the IWCC investigation was fair; that IWCC had sufficient evidence to substantiate the charges against Plaintiff; that IWCC had just cause to terminate Plaintiff; and that termination was reasonable discipline, considering Plaintiff's collective infractions and past disciplinary history. *Id.* ¶¶ 30, 39–40, 42–43. The facts of IWCC's investigation into Plaintiff's misconduct are undisputed. *Id.* ¶¶ 18–29, 34–40, 42–43, 46.

Summary judgment should be granted in favor of Defendant for five reasons. First, Plaintiff's claims that arose prior to July 2018 are barred as a matter of law. Second, Plaintiff failed to exhaust her claim for color discrimination. Third, no reasonable jury could find that Plaintiff's termination was discriminatory. Fourth, no reasonable jury could find that Plaintiff's termination was retaliatory. Finally, Plaintiff cannot show that she experienced any harassment based on a protected characteristic within the relevant time period.

## II. Argument

### A. Plaintiff's Response Fails to Comply with the Local Rules.

"In the Northern District of Illinois, Local Rule 56.1 controls the presentation of evidence at the summary judgment stage." *Flint v. City of Belvidere*, 791 F.3d 764, 766–67 (7th Cir. 2015)

(citation omitted). "The obligation set forth in Local Rule 56.1 is not a mere formality." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011). Rather, a party opposing summary judgment is obligated "to identify specific facts that establish a genuine issue for trial." *Id*. "Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings." *Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011).

### 1. The Court Should Deem Defendant's Facts Admitted Where Plaintiff Fails to Properly Respond Under Local Rule 56.1(b)(2).

To dispute a movant's asserted fact, "a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact." N.D. Ill. LR 56.1(e)(3). "[A] general denial is insufficient to rebut a movant's factual allegations; the nonmovant must cite specific evidentiary materials justifying the denial." *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000). In violation of this rule, several of Plaintiff's attempts to dispute Defendant's asserted facts are either wholly or partially unsupported by the evidence cited. Pl. Resp. to DSOF ¶¶ 17, 33, 41, 44, 54–55, 62–63, 65–66, 68. Accordingly, all of these facts should be deemed admitted. *See Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 871 (7th Cir. 2000) (accepting "as true all material facts as submitted by [movant for summary judgment] and not properly contested by [nonmovant]").

Additionally, a response to the movant's statement of facts "may not set forth any new facts, meaning facts that are not fairly responsive to the asserted fact to which the response is made." N.D. Ill. LR 56.1(e)(2). Despite this rule, Plaintiff responds to several facts by setting forth new and unresponsive facts. Pl. Resp. to DSOF ¶¶ 17, 33, 66, 68. These noncompliant responses

should be disregarded. *See, e.g., Anderson v. Iacullo*, 963 F. Supp. 2d 818, 822 (N.D. Ill. 2013) (ignoring extraneous assertions of fact in response to party's Rule 56.1 statement).

### 2. The Court Should Disregard Plaintiff's Noncompliant Statements of Additional Facts.

The Court should similarly disregard the noncompliant fact statements in Plaintiff's Local Rule 56.1(b)(3) Statement of Additional Facts. Courts "may disregard any asserted fact that is not supported with [] a citation" to the evidentiary record. N.D. Ill. LR 56.1(d)(2). Here, several of Plaintiff's asserted facts are either wholly or partially unsupported by the evidence cited. Def. L. R. 56.1 Resp. to Pl. Statement of Additional Facts ¶¶ 5, 6, 11, 20, 24, 26, 32–33, 35, 39, Dkt. No. 192 [hereafter Def. Resp. to PSOAF]. To the extent these facts are unsupported by specific evidence, they should be stricken or disregarded. *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 702 (7th Cir. 2010).

Additionally, Plaintiff's statement of additional facts "should be limited to *material* facts, that is, facts pertinent to the outcome of the issues identified in the summary judgment motion." *Malec*, 191 F.R.D. at 583–84 (emphasis in original); *see also Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006) (holding that Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" fail to comply). Plaintiff improperly submits facts that are immaterial to the issues before the Court in Defendant's Motion for Summary Judgment. Def. Resp. to PSOAF ¶¶ 3, 6–13, 15–17, 20, 22–23, 30, 32. These purported facts should be disregarded.

Finally, Plaintiff fails to present facts in a form that would be admissible, as required by Rule 56. Fed. R. Civ. P. 56(c)(2), (e)(3). It is well established that inadmissible hearsay "may not be considered at summary judgment." *See Eaton v. J.H. Findorff & Son, Inc.*, 1 F.4th 508, 512 n.3 (7th Cir. 2021); N.D. Ill. LR 56.1(d)(2); Fed. R. Evid. 802. Thus, the Court should disregard Plaintiff's asserted facts in which the evidence cited by Plaintiff is inadmissible because it lacks

foundation, sufficient personal knowledge, or constitutes hearsay. Def. Resp. to PSOAF ¶¶ 1, 3, 6, 13–14, 17–18, 20; Fed. R. Evid. 602, 802, 901.

> **B.** **Plaintiff's Discrimination and Retaliation Claims that Arose Prior to July 4, 2018, are Barred.**

As argued in Defendant's MSJ, to the extent that Plaintiff's claims are based upon alleged conduct that occurred prior to July 25, 2018, they are barred under the doctrine of *res judicata*. Def. MSJ 5–6. Further, Plaintiff's claims based upon alleged conduct that occurred prior to July 4, 2018, are barred by the statute of limitations. *Id.* at 7. Plaintiff's Response does not address either argument, other than in a footnote where Plaintiff *concedes* that her allegations that pre-date July 4, 2018, are merely "background evidence" to support her claims. Resp. 3–4, n.3. Accordingly, it is undisputed that Plaintiff is not entitled to pursue claims for any alleged discriminatory acts that pre-date July 4, 2018. *See Palka v. City of Chi.*, 662 F.3d 428, 437 (7th Cir. 2011) (holding that claims barred by *res judicata* cannot be relitigated); *Roney v. Ill. Dep't of Transp.*, 474 F.3d 455, 460 (7th Cir. 2007) (holding that a plaintiff cannot recover for allegedly discriminatory conduct where the plaintiff fails to file an EEOC charge within 300 days of its occurrence).

Despite Plaintiff's concession, her Response is riddled with allegations that pre-date the relevant time period and are unconnected to any timely claim. Def. Resp. to PSOAF ¶¶ 3, 6–16, 22–23. Plaintiff's arguments based upon purported "disparate treatment" by Castronova—years before her termination—are insufficient to create an inference that her termination was pretextual. *See Igasaki v. Ill. Dep't of Fin. & Prof'l Regulation*, 988 F.3d 948, 958 (7th Cir. 2021) (finding that plaintiff's allegations of "litany of past wrongs" prior to his termination were insufficient evidence of pretext).

Further, with respect to Plaintiff's hostile work environment claim, the Court cannot consider Plaintiff's purported facts that pre-date the relevant time period because Plaintiff has not

presented evidence of any new conduct within the statutory period. *See Milligan-Grimstad v. Stanley*, 877 F.3d 705, 712–13 (7th Cir. 2017) (holding that a court cannot consider conduct "outside the statute of limitations as part of [a] hostile work environment claim" unless "the alleged conduct forms a single unlawful employment practice falling at least in part within the statutory period"); *Mannie v. Potter*, No. 04 C 1584, 2006 U.S. Dist. LEXIS 114377, at *6–8 (N.D. Ill. June 1, 2006) (granting summary judgment where "the instant case does not include any allegations in support of [plaintiff's] hostile work environment claim that were not included" in plaintiff's previous lawsuit or "not known to plaintiff prior to" final judgment in plaintiff's previous lawsuit, pursuant to *res judicata*). Accordingly, Plaintiff's allegations of years-old grievances of alleged mistreatment, Def. Resp. to PSOAF ¶¶ 3, 6–16, 22–23, cannot support Plaintiff's claims in this matter. *See Milligan-Grimstad*, 877 F.3d at 712–13.

### C. Plaintiff's Claim for Color Discrimination is Barred by her Failure to Exhaust her Administrative Remedies.

In support of summary judgment, Defendant argued that Plaintiff's color discrimination claim is not "like or reasonably related" to the claims in her EEOC charge and, as such, Plaintiff's claim is barred by Plaintiff's failure to exhaust her administrative remedies. Def. MSJ 7–8. Plaintiff fails to respond to Defendant's argument, other than in a mere footnote, in which Plaintiff claims that her "color discrimination claim is based on the same conduct (*i.e.*, Castronova's pattern of racially-motivated misconduct, scrutiny, and targeting) and implicates the same individuals (*i.e.*, Castronova) as [Plaintiff's] claim of race discrimination." Resp. 3, n.2. Plaintiff's footnote is insufficient to save her color discrimination claim. First, Plaintiff has waived any response by presenting it "only in an undeveloped footnote[.]" *Harmon v. Gordon*, 712 F.3d 1044, 1053 (7th Cir. 2013) (collecting cases). Moreover, courts have held that, for the purpose of determining whether a claim is within the scope of an EEOC charge, "discrimination on the basis of color is

*not* reasonably related to discrimination on the basis of race." *Thompson v. Fairmont Chi. Hotel*, 525 F. Supp. 2d 984, 989 (N.D. Ill. 2007) (collecting cases) (emphasis added). Here, it is undisputed that Plaintiff's EEOC charge did not allege color discrimination, nor does the charge reference the hue or shade of Plaintiff's skin. Pl. Resp. to DSOF ¶¶ 47–49. Accordingly, Defendant is entitled to summary judgment.

### D. No Reasonable Jury Could Find Plaintiff's Termination was Discriminatory.

Plaintiff seemingly admits that she cannot show that she was meeting Defendant's legitimate expectations to establish a *prima facie* case of discrimination under *McDonnell Douglas*. Resp. 7–8, 10, n.6. Instead, Plaintiff argues that she need not show that she was meeting Defendant's performance expectations because, as Plaintiff's supervisor, Castronova "held [Plaintiff] to a harsher standard than her co-workers" in evaluating her work performance. *Id.* at 4–8, 10, n.6. However, Plaintiff's arguments are immaterial because Plaintiff was not terminated for poor work performance, but rather as a result of IWCC's findings that Plaintiff engaged in six specific incidents of misconduct in June and July 2018. Pl. Resp. to DSOF ¶¶ 18–29, 34–40, 42–43, 46.

Moreover, Plaintiff's focus on attacking Castronova ignores the other decision-makers in Plaintiff's termination, Pl. Resp. to DSOF ¶¶ 21–22, 24, 26, 29, 32–33, 36–40, 42–43, the co-workers who also reported Plaintiff's misconduct, *id.* ¶¶ 19, 21, 26, IWCC's formal investigation of Plaintiff's misconduct, *id.* ¶¶ 28–29, 34–40, 42–43, 45, as well as Plaintiff's admissions regarding her misconduct, *id.* ¶¶ 18, 20, 23, 25. In light of the undisputed facts, no reasonable jury could find that the legitimate reasons for Plaintiff's termination were pretextual or discriminatory.

1.      ***Plaintiff Fails to Sufficiently Challenge the Legitimacy of IWCC's Disciplinary Proceedings Against Plaintiff.***

Plaintiff's argument that IWCC "relied on incomplete and biased factual determinations" during its investigation of Plaintiff's misconduct, Resp. 15–17, is baseless. First, Plaintiff provides no support for her claim that Castronova's reports of Plaintiff's misconduct were "biased" or "factually inaccurate[.]" Resp. 1. Such "conclusory" allegations "cannot defeat a motion for summary judgment." *Thomas v. Christ Hosp. & Med. Ctr.*, 328 F.3d 890, 892-93 (7th Cir. 2003). To the contrary, Plaintiff has *admitted* to several of the incidents of misconduct that resulted in her termination. Pl. Resp. to DSOF ¶¶ 18, 20, 23, 25; *see also Williams v. DeJoy*, No. 24-2272, 2025 U.S. App. LEXIS 4303, at *7 (7th Cir. Feb. 25, 2025) (affirming summary judgment on retaliation claim where the plaintiff did not "contest that her attendance records show chronic tardiness and unexplained absences"). Additionally, aside from Castronova's reports, Plaintiff's co-workers Rosalie Goral ("Goral"), Janette Palomares ("Palomares"), and Darren Crowder ("Crowder") also separately reported several of the incidents of misconduct for which Plaintiff was terminated. Pl. Resp. to DSOF ¶¶ 19, 21, 26. Plaintiff argues, without any evidence, that Palomares was a "witness with demonstrated biases towards [Plaintiff]," Resp. 15–16, but ignores the fact that Palomares is not outside her protected class for race, DSOF ¶ 52. Further, IWCC conducted an internal investigation into the reports against Plaintiff, during which time Plaintiff was given an opportunity to respond to all of the allegations against her. Pl. Resp. to DSOF ¶¶ 18–29, 34–38. Indeed, CMS, a third party, reviewed IWCC's investigation into Plaintiff's misconduct and determined that IWCC's investigation of Plaintiff was fair; that IWCC had sufficient evidence to substantiate the charges against Plaintiff; and that IWCC had just cause to terminate Plaintiff. *Id.* ¶ 30, 39–40, 42–43, 46.

Plaintiff's gripes regarding which witnesses IWCC "credited" and which ones it "disregarded," Resp. 15–16, are insufficient to establish pretext. *See Hill v. Tangherlini*, 724 F.3d 965, 968 (7th Cir. 2013) ("Hill's evidence shows only that he disagreed with Gabrish's assessment of his interactions with coworkers, not that GSA lied about its reasons for firing him."). Indeed, "[a]n inquiry into pretext requires that [courts] evaluate the honesty of the employer's explanation, rather than its validity or reasonableness." *Id.* If an employer "honestly believed it made the correct employment decision—even if its decision was inaccurate, unfair, foolish, trivial, or baseless— [the plaintiff's] claims cannot succeed." *Barnes-Staples v. Carnahan*, 88 F.4th 712, 716 (7th Cir. 2023) (cleaned up).

Here, Plaintiff's claims that IWCC "disregarded witnesses corroborating [Plaintiff's] version of events," Resp. 15–16, are easily refuted by the evidentiary record. For example, Plaintiff's argument that "[Linda] Freeman reported that Castronova was to blame for picking on Aponte," and "[i]nstead of crediting the testimony of Freeman—a neutral third party—Defendant's investigative file described Freeman's statement as a 'rant[,]'" Resp. 16, references a *separate* investigation into an August 2017 workplace altercation for which Plaintiff was suspended in October 2017, nearly a year before Plaintiff's termination. Def. Resp. to PSOAF ¶¶ 14–15; DSOF ¶ 9.

But even *if* Plaintiff presented evidence to show that Castronova's and other's reports regarding June and July 2018 incidents were "factually inaccurate," Plaintiff has not identified any evidence to suggest that Lagattuta did not honestly believe these witness reports when he concluded that Plaintiff violated IWCC policies and recommended her discharge. *See Saud v. DePaul Univ.*, 154 F.4th 563, 570–71 (7th Cir. 2025) (finding that a professor who was dismissed due to allegations brought against him for sexual misconduct could not defeat summary judgment

by challenging the underlying allegations because Plaintiff did not identify evidence that "Dean Velasco, as the final decisionmaker," did not "'honestly believe' he was making the correct employment decision."); *Igasaki*, 988 F.3d at 958 ("Other than attacking Forester's veracity, which is a conclusory allegation that does not defeat summary judgment, Igasaki has not offered any evidence of dishonesty."). Accordingly, Plaintiff has failed to identify any genuine issue of material fact as to whether the disciplinary proceedings against Plaintiff that resulted in her termination were pretextual.

### 2.     *Defendant's Reasons for Plaintiff's Termination Have Never "Shifted."*

Contrary to Plaintiff's claims, IWCC's reasons for Plaintiff's termination have never "shifted." Resp. 14–15. To give rise to pretext, an employer's "explanations must *actually* be shifting and inconsistent." *Saud*, 154 F.4th at 569 (emphasis added); *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 881 (7th Cir. 2016) (cleaned up). Plaintiff claims that IWCC's explanation for Plaintiff's termination "shifted" because—in addition to the six incidents from June and July 2018 at issue in Plaintiff's termination—IWCC also investigated a report from Castronova that Plaintiff improperly left work early without permission on July 3, 2018, but Plaintiff was not ultimately disciplined for the July 3, 2018, incident. Resp. 14–15; *see* Def. Resp. to PSOAF ¶ 23. Nevertheless, "merely providing multiple, or additional, reasons for an adverse employment decision does not establish pretext." *Saud*, 154 F.4th at 569. Further, "[w]here an employer relies on multiple reasons for the termination, its failure to address *all* of the reasons in *each* communication about the employee is not enough to show contradictions or shifts in rationales that suggest pretext." *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 577 (7th Cir. 2015) (emphasis in original). Further, Plaintiff's claim that documents regarding the July 3, 2018, incident were "removed" because "the final justification for [Plaintiff's] firing . . . was

workshopped so that CMS would rubberstamp its approval," Resp. 14–15, misrepresents the evidentiary record. Def. Resp. to PSOAF ¶¶ 23, 32–40. Indeed, the question of whether Plaintiff left work early without permission on July 3, 2018, does not change the fact that Plaintiff was found to have violated IWCC policies during the six incidents for which Plaintiff was terminated. Pl. Resp. to DSOF ¶¶ 18–29, 34–40, 42–43, 46.

Nor does Defendant's present Motion for Summary Judgment "shift" the reasons for Plaintiff's termination. Plaintiff claims that, by arguing that Plaintiff's termination was appropriate "because of the entirety of Plaintiff's previous disciplinary history," Defendant now takes a position that is inconsistent with "termination documents" that "substantively address[] only the incidents occurring in June and July 2018." Resp. 15. Again, Plaintiff misrepresents the facts in the record. It is undisputed that IWCC implements the tenets of progressive and corrective discipline set forth in the CBA. Pl. Resp. to DSOF ¶ 10. Therefore, after IWCC's investigation concluded that Plaintiff violated policy during the six incidents in June and July 2018, IWCC determined that termination was the appropriate level of discipline for those six infractions, in light of the progressive discipline that Plaintiff had previously received, including eight (8) previous suspensions. *Id.* ¶¶ 10–12, 36–38.

Accordingly, Plaintiff fails to show that any "shifting" or "inconsistent" reasoning from IWCC to support an inference of pretext. *See Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 577 (7th Cir. 2003) (holding that an employer's "explanations must actually be shifting and inconsistent to permit an inference of mendacity."). To the contrary, the record supports that Defendant has consistently maintained legitimate, non-discriminatory, and non-retaliatory reasons for Plaintiff's termination.

11

### 3. *Defendant Did Not Deviate from Standard Procedure.*

Plaintiff's argument that "Defendant deviated from standard procedure in seeking approval for [Plaintiff's] termination," similarly lacks evidentiary support. Resp. 17–18. Plaintiff makes this claim merely because CMS "provided written revisions" to IWCC's disciplinary documents, and because one of the emails from Rausch requested "additional time" for CMS to review Plaintiff's discharge packet. *Id.* However, the record does not support that either IWCC or CMS deviated from any policy or procedure whatsoever. Pl. Resp. to DSOF ¶¶ 30–33, 39–45; Def. Resp. to PSOAF ¶¶ 29–30, 32–40. To the contrary, Rausch testified that there was nothing was "out of the ordinary" with respect to CMS's review of Plaintiff's discharge packet and disciplinary documentation. Pl. Resp. to DSOF ¶ 45.

Nor is there evidence to show that the CMS approval process took longer in the case of Plaintiff's termination than in usual practice. Plaintiff's argument that "Rausch indicated that she needed additional time beyond the standard 7–10 days for final review," Resp. 17–18, misstates Rausch's testimony. Rausch testified that it usually takes CMS approximately 7–10 days "to review a standard discharge packet," not that the entire CMS approval process only takes 7–10 days. Def. Resp. to PSOAF ¶ 30. Moreover, Plaintiff's allegations that *CMS* deviated from its standard timing—even if supported by evidence, which it is not—does not create an inference that *IWCC* terminated Plaintiff for pretextual reasons. As such, Plaintiff's vague and unsupported claims that Defendant "deviated from standard procedure" cannot defeat summary judgment. *See Everett v. Cook County*, 655 F.3d 723, 728 (7th Cir. 2011) ("[F]or a jury to be able to infer any impropriety based on an employer's failure to abide by its own procedures, the employee must show that there was an actual procedure in place that served to bind the employer's discretion."); *see also Lohmeier v. Gottlieb Mem'l Hosp.*, No. 24-1470, 2025 U.S. App. LEXIS 20747, *23 (7th

Cir. Aug. 14, 2025) (holding that, even after the plaintiff "presented evidence of a small deviation from a written policy," that alone was "insufficient for a reasonable factfinder to conclude [plaintiff's] national origin or color caused her termination").

### 4. *Plaintiff's Allegations Regarding "Comments" About Her Accent or English-Speaking Ability Cannot Defeat Summary Judgment.*

Plaintiff's claim that Castronova made "repeated comments regarding [Plaintiff's] accent and ability to speak English" greatly misrepresents the evidentiary record. Pl. Resp. to DSOF ¶¶ 57–58; Def. Resp. to PSOAF ¶¶ 9, 11–12. For example, Plaintiff's claim that Castronova's performance reviews of Plaintiff "directed subjective criticism of Aponte's accent," Resp. 6, is false. None of Plaintiff's performance reviews include any reference whatsoever to Plaintiff's accent. Def. Resp. to PSOAF ¶ 9; Pl. Resp. to DSOF ¶¶ 6–9, 57.

Rather, it is undisputed that Plaintiff told Castronova that she did not understand Castronova's instructions or general workers compensation information because English is her second language. Pl. Resp. to DSOF ¶ 57. In response to Plaintiff's statement, Castronova—who also adopted English as her second language, *id.* ¶ 61—encouraged Plaintiff "to enroll in English as a Second Language (ESL) class." *Id.* ¶ 57. Plaintiff has not identified any evidence to suggest discriminatory intent behind Castronova's recommendation. Moreover, "[t]o be probative of discrimination, isolated comments must be contemporaneous with the discharge or causally related to the discharge decision making process." *Geier v. Medtronic, Inc.*, 99 F.3d 238, 242 (7th Cir. 1996) (internal citations omitted). Even if Plaintiff could show discriminatory intent behind Castronova's recommendation that Plaintiff enroll in an ESL class in 2017—which she cannot—the 2017 recommendation is insufficient to create an inference that Plaintiff's termination in September 2018 was pretextual. *Id.*

13

Similarly, Plaintiff's allegations that two "[o]ther IWCC employees witnessed Castronova make derogatory comments about Plaintiff's accent and English-speaking ability[,]" PSOAF ¶ 11, are insufficient to defeat summary judgment. Even if Plaintiff's allegations were supported by the record—which they are not, Def. Resp. to PSOAF ¶ 11—the two IWCC employees in question testified that they heard Castronova make comments regarding Plaintiff "probably before 2016" and "in or around 2016," respectively. *Id.* Plaintiff's allegations regarding these "comments" by Castronova are wholly unrelated to the process by which Plaintiff was terminated, years later, for calling Castronova a "bitch," calling Castronova someone with "mental illness," throwing paperclips and clip binders on a coworker's desk, verbally harassing another coworker, abandoning her work station without permission, and filming Castronova on Plaintiff's cell phone without permission. Pl. Resp. to DSOF ¶¶ 18–29, 34–40, 42–43, 46. Castronova's alleged "comments" are even further removed from Plaintiff's termination because IWCC fully investigated all of Castronova's reports of misconduct, including giving Plaintiff the opportunity to respond to the allegations against her. *Id.* As such, Plaintiff has not identified specific evidence sufficient to create an inference of pretext. *See Eassa v. Brennan*, No. 17 CV 812, 2019 U.S. Dist. LEXIS 22407, *14-15 (N.D. Ill. Feb. 12, 2019) ("Eassa's examples of previous instances of racist and religiously bigoted commentary are too removed in time and context to demonstrate discrimination or overcome the Postal Service's legitimate explanation.").

### 5. Plaintiff's Allegations of "Disparate Treatment" by Castronova Cannot Defeat Summary Judgment.

Plaintiff's claims that she was subjected to "disparate treatment" by Castronova in various ways throughout her employment, Resp. 4–8, quickly fall apart under scrutiny. For example, Plaintiff references an incident where Plaintiff and another employee, J.P., were engaged in a workplace altercation in August 2017—nearly one year before Plaintiff's termination. Resp. 7.

14

Plaintiff argues that this incident demonstrates Castronova's "disparate treatment of [Plaintiff]" because J.P. "received only an oral reprimand," while "Defendant suspended [Plaintiff] for 30 days for the same incident[.]" *Id.* However, Castronova was *not* involved in determining the levels of discipline that either Plaintiff or J.P. received as result of the incident. Def. Resp. to PSOAF ¶ 15. Rather, it is undisputed that their respective levels of discipline were based on each of their prior disciplinary histories, pursuant to progressive discipline under the CBA. *Id.*; Pl. Resp. to DSOF ¶ 10. Plaintiff's claim of disparate treatment is even further undercut by the fact that J.P. is also a Latina woman who also spoke with an accent and is not outside Plaintiff's protected class for race. Def. Resp. to PSOAF ¶ 15. Thus, J.P. is not a similarly situated comparator. *See Gamble v. Cnty. of Cook*, 106 F.4th 622, 626 (7th Cir. 2024) (finding that a purported similarly situated comparator must be "directly comparable" to a plaintiff "in all material respects so as to eliminate other possible explanatory variables").

Plaintiff's other allegations that Castronova mistreated her—including that Castronova gave her "harsher" performance reviews than her co-workers, "subjected [Plaintiff's] work" to greater scrutiny, required Plaintiff to submit "late slips" when tardy, "unreasonably rejected" Plaintiff's requests for benefit time, and "removed" a communal label writer and punch holder off of Plaintiff's desk, Resp. 4–8—similarly fail to show any "disparate treatment" by Castronova under Title VII. Def. Resp. to PSOAF ¶¶ 3, 5–27; Pl. Resp. to DSOF ¶¶ 6–9, 57–59, 63–76. Moreover, these trivial workplace disputes are wholly insufficient to show discriminatory animus or pretext with respect to Plaintiff's termination. *See Igasaki*, 988 F.3d at 958 ("Igasaki recites a litany of past wrongs purportedly probative of race or sex discrimination, including mandatory tasks made voluntary for others, increased workload, constant admonishment, arbitrary remote work and identification policies, and general harsh treatment. For Igasaki, this disparate treatment

is enough to show that the Department terminated him because of his Asian ethnicity or homosexuality. It is not.").

Viewing the totality of the evidentiary record, no reasonable juror could find that Plaintiff was terminated because of her race, color, or national origin. *See Paterakos v. City of Chicago*, No. 24-1567, 2025 U.S. App. LEXIS 20419, at *15 (7th Cir. Aug. 12, 2025) (affirming summary judgment where "no reasonable jury could find that defendants' performance-based rationales for the three suspensions were mere pretexts for racial discrimination"). Defendant is entitled to summary judgment on Plaintiff's discrimination claims.

### E. No Reasonable Jury Could Find Plaintiff's Termination was Retaliatory.

Plaintiff similarly fails to raise a genuine issue of material fact as to whether her 2015 EEOC Charge or 2016 Lawsuit was a but-for cause of her termination—which occurred years later. Pl. Resp. to DSOF ¶¶ 14–15, 46; *see Oest v. Illinois Dep't of Corrections*, 240 F.3d 605, 616 (7th Cir. 2001) (recognizing that a "substantial time lapse is counter-evidence of any causal connection" between protected activity and an adverse employment action (cleaned up)). To the contrary, the undisputed facts support that Plaintiff was terminated for legitimate reasons after IWCC's investigation determined that Plaintiff engaged in six incidents of misconduct in June and July 2018. Pl. Resp. to DSOF ¶¶ 18–29, 34–40, 42–43, 46. Plaintiff's earlier-filed protected activity "does not immunize [her] from being subsequently disciplined or terminated" for her "inappropriate workplace behavior." *Kidwell v. Eisenhauer*, 679 F.3d 957, 967 (7th Cir. 2012).

The arguments in Plaintiff's Response fail to create a triable issue of retaliation. First, Plaintiff claims that the July 19, 2018, incident of misconduct—during which Plaintiff filmed Castronova on her cell phone without Castronova's permission and despite Castronova's requests for Plaintiff to stop, Def. Resp. to PSOAF ¶ 27; Pl. Resp. to DSOF ¶¶ 25–26—was "protected

16

activity" that Plaintiff engaged in "just days before Defendant initiated the process to fire her." Resp. 12–13. Specifically, Plaintiff relies on the fact that Castronova and Crowder reported that Plaintiff stated during the incident that Castronova was "harassing" her by asking Plaintiff to move from one copy machine to another. Def. Resp. PSOAF ¶ 27. However, Plaintiff's suggestion that her actions constituted "protected activity" is objectively unreasonable. *See Scheidler v. Indiana*, 914 F.3d 535, 542 (7th Cir. 2019) (holding that statutorily protected activity requires that a plaintiff "not only have a subjective (sincere, good faith) belief that he opposed an unlawful practice; his belief must also be objectively reasonable, which means that the complaint must involve discrimination that is prohibited by Title VII."). Indeed, "[m]erely complaining in general terms of discrimination or harassment" is not statutorily protected activity without "providing facts sufficient to create that inference." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). Accordingly, Plaintiff's claim that she engaged in "protected activity" during this July 19, 2018, cell phone incident are a red herring and should be rejected as a matter of law.

Next, Plaintiff claims that, after she filed her 2015 EEOC Charge, she was subjected to a "pattern" of discriminatory conduct, including "performance reviews" that contained "petty criticism," as well as allegedly "differential treatment" from her co-workers. Resp. 12–13. Plaintiff argues that this "pattern of conduct culminated in [Plaintiff's] termination and bridges the gap between her original protected activity and her termination." *Id.* However, in so arguing, Plaintiff "invites [the court] to find causation from layering one inference (a pattern of poor performance reviews) onto another (suspicious timing)[,]" which "trends towards impermissible speculation[.]" *Igasaki*, 988 F.3d at 960. As such, Plaintiff's speculative and conclusory allegations are insufficient to defeat summary judgment. *Id.*

Additionally, Plaintiff argues that "Castronova and Lagattuta initiated the final termination process the same day [Plaintiff's] previous lawsuit was voluntarily dismissed," Resp. 13—a claim easily refuted from the evidentiary record. Rather, it is undisputed that Castronova, Crowder, Palomares, and Goral each reported the incidents of Plaintiff's misconduct one to seven weeks, respectively, *before* Plaintiff voluntarily dismissed her 2016 Lawsuit on July 26, 2018. Pl. Resp. to DSOF ¶¶ 17, 19, 21–24, 26. It is further undisputed that, by the time Plaintiff dismissed her 2016 Lawsuit, she had already received notice of the charges against her and sat for an investigative interview. *Id.* ¶¶ 28–29. Moreover, Plaintiff's attempts to create a causal nexus between her termination and the dismissal of her 2016 Lawsuit are unpersuasive because the *dismissal* of her lawsuit is not protected activity. *See Scheidler*, 914 F.3d at 542.

Finally, Plaintiff repeats the fact that Lagattuta informed CMS that he believed termination was the appropriate discipline for Plaintiff's collective infractions on the same date that Plaintiff dismissed her 2016 Lawsuit. Resp. 13; *see* Pl. Resp. to DSOF ¶ 33; Def. Resp. to PSOAF ¶ 32. However, Plaintiff's arguments regarding the decision to *terminate* her, as opposed to giving her a lesser discipline, "is a claim that her employer overreacted to her behavior—not that [her employer] fired her under false pretenses." *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 541 (7th Cir. 2007). Plaintiff fails to identify any evidence causally linking her termination to her protected activity, and Plaintiff's allegations of any "retaliatory animus relies entirely on speculation." *See Brown v. Advoc. S. Suburban Hosp.*, 700 F.3d 1101, 1108 (7th Cir. 2012). Accordingly, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

### F. Defendant is Entitled to Summary Judgment on Plaintiff's Claim for Hostile Work Environment.

Defendant is similarly entitled to summary judgment on Plaintiff's claim for a hostile work environment because Plaintiff has failed to produce evidence to show that she was subjected to

18

any harassment based on her race, color, or national origin during the relevant time period. As argued in Defendant's MSJ, most of Plaintiff's claims of alleged "harassment" or "mistreatment" are based on isolated incidents that allegedly occurred before July 4, 2018. Def. Resp. to PSOAF ¶¶ 3, 6–9, 11, 13–15, 22–23; Pl. Resp. to DSOF ¶¶ 57, 75–76. As such, Plaintiff's claims regarding these events are barred under *res judicata* and the statute of limitations. Def. MSJ 5–7, 19–20. Further, the Court cannot consider these alleged incidents with respect to Plaintiff's present hostile work environment claim because Plaintiff fails to produce evidence showing that the conduct either continued into the statutory period or was unknown to Plaintiff prior to final judgment in Plaintiff's 2016 Lawsuit. *Id.* 19–20. Plaintiff's Response never addresses these arguments, and, therefore, Plaintiff has waived any response. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument…results in waiver." (collecting cases)).

Plaintiff's waiver aside, the evidentiary record demonstrates that Plaintiff's claims of "harassment" are almost entirely based on incidents outside the relevant time period. Def. Resp. to PSOAF ¶¶ 3, 6–9, 11, 13–15, 22–23; Pl. Resp. to DSOF ¶¶ 57, 75–76. Specifically, *all* of Plaintiff's purported "evidence" that Castronova made "derogatory comments" about her accent or English-speaking ability pre-dates July 2018. Def. Resp. to PSOAF ¶ 11. Plaintiff has not produced evidence that Castronova made any "derogatory comments" or references to Plaintiff's protected characteristics within the relevant time period. *Id.* Thus, Plaintiff's allegations of "harassment" pre-date July 4, 2018—including Plaintiff's claims that Castronova made "comments" about her accent or English-speaking ability—cannot support Plaintiff's hostile work environment claim as a matter of law. *See Milligan-Grimstad*, 877 F.3d at 712–13; *Mannie*, 2006 U.S. Dist. LEXIS 114377, at *6–8.

Similarly, Plaintiff's claims that "Castronova subjected [Plaintiff] to harsher, subjective, and retaliatory performance reviews[,]" as compared to the performance reviews of Plaintiff's co-workers, Resp. 5–6, is entirely based on allegations that pre-date the statutory period and cannot be considered by the Court. Def. Resp. to PSOAF ¶¶ 7–10, 16; *Milligan-Grimstad*, 877 F.3d at 712–13; *Mannie*, 2006 U.S. Dist. LEXIS 114377, at *6–8. Plaintiff has not identified any evidence from within the relevant time period to support her claim.

Excluding Plaintiff's time-barred claims, Plaintiff's only remaining allegations of "harassment," Def. Resp. to PSOAF ¶¶ 5, 17–20; Pl. Resp. to DSOF ¶¶ 63–74, are trivial workplace grievances which amount to no more than "ordinary tribulations of the workplace," unrelated to Plaintiff's protected characteristics, and do not constitute discrimination as a matter of law. *See Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2455 (2013). Further, Plaintiff's arguments that Castronova generally treated her more harshly than her co-workers, Resp. 11, cannot defeat summary judgment where, even if supported by evidence, Castronova's "treatment may have been the result of [Plaintiff']s performance: a string of poor reviews, corrective action plans, and suspensions," *see Igasaki*, 988 F.3d at 958–59. Accordingly, the evidentiary record is "insufficient to show a workplace permeated with discriminatory ridicule, intimidation, and insult[,]" and Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim. *See Luckie v. Ameritech Corp.*, 389 F.3d 708, 714 (7th Cir. 2004).

## III.    Conclusion

For these reasons, Defendant, IWCC, respectfully requests that this Court grant its Motion for Summary Judgment and enter judgment in favor of Defendant and against Plaintiff.

January 20, 2026

Respectfully submitted,

KWAME RAOUL
Illinois Attorney General

By: /s/ *Maebetty Kirby*
Maebetty Kirby
Assistant Attorney General
Office of the Illinois Attorney General
Government Representation Division
General Law Bureau
115 S. LaSalle Street
Chicago, Illinois 60603
(773) 590-7857
*mary.kirby@ilag.gov*