IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GLADYS APONTE,<br><br>                Plaintiff,<br><br>v.<br><br>ILLINOIS WORKERS' COMPENSATION COMMISSION,<br><br>                Defendant. | Case No. 19 cv 05260<br><br>Honorable Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

### Background

      Plaintiff Gladys Aponte was terminated from her employment with Defendant Illinois Workers' Compensation Commission (IWCC) after her employer found that she engaged in conduct that violated multiple workplace policies. Plaintiff alleges that she was terminated because of her race, national origin, and color, and in retaliation for filing a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and a prior lawsuit. Plaintiff also maintains she was subject to a hostile work environment because of her supervisor's conduct, which included making comments about Plaintiff's ability to speak English and subjecting her to more scrutiny than others in the workplace. For the reasons explained below, Plaintiff has failed to create a genuine dispute of material fact that she was terminated because of her protected characteristics or in retaliation for engaging in protected activity. Nor has Plaintiff presented evidence from which a reasonable jury could find that her supervisor's actions created an environment so severe or pervasive as to alter the conditions of her employment. Accordingly, the Court grants Defendant's motion for summary judgment [184] on all of Plaintiff's claims.

### Legal Standard

      Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court does not "weigh the evidence and determine the truth of the matter" but rather determines whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Id.* at 255.

1

### *Res Judicata* and Statute of Limitations

Regardless of the facts in this case, Defendant contends that the case can be largely resolved on *res judicata* and statute of limitations concerns. Before filing this lawsuit, Plaintiff filed another lawsuit against Defendant on January 13, 2016, alleging employment discrimination and retaliation. *See Aponte v. IL Workers Comp. Comm.*, No. 16-cv-00459. Plaintiff filed a stipulation of voluntary dismissal on July 25, 2018, and the case was dismissed with prejudice the next day. *See id.* at Dkts. [87]; [88]. Defendant argues that *res judicata* bars Plaintiff's discrimination and retaliation claims that arose before July 25, 2018. Defendant maintains that the operative date for *res judicata* is the date Plaintiff filed the stipulation of dismissal, but Seventh Circuit precedent indicates that the "crucial date" is the date the prior complaint was filed, not the date the prior lawsuit was dismissed. *See, e.g.*, *Scholz v. United States*, 18 F.4th 941, 954 (7th Cir. 2021). Defendant fails to develop any argument as to why the dismissal date would be the operative date for *res judicata* purposes. The Court therefore declines to decide this question, since neither party has sufficiently addressed it. The Court notes that this does not change the outcome because Defendant is entitled to summary judgment regardless of whether the Court considers the workplace conduct that Defendant maintains is barred by *res judicata*.

In a similar vein, Defendant argues that any claims based on conduct that occurred before July 4, 2018, are barred by the statute of limitations. A plaintiff must file a charge of discrimination within 300 days of the occurrence, and Plaintiff filed her EEOC charge on April 30, 2019. In response, Plaintiff argues that time-barred conduct can be considered by a court as background evidence in support of a timely claim, but does not identify which conduct she agrees is time-barred. As with the *res judicata* issue, the Court need not address the statute of limitations issue because the result is the same. Even if the Court considers the conduct that Defendant maintains is time-barred, Plaintiff fails to raise a genuine dispute of material fact on any of her claims, and no reasonable jury could find that she was subject to discrimination, retaliation, or a hostile work environment.

### Facts

#### I.     Plaintiff's Employment

The following facts are undisputed unless otherwise stated.[1] Plaintiff is a Latina woman of Dominican heritage. PRDSOF ¶ 1. Although Defendant disputes that Plaintiff is Black, she identified herself as Black in her EEOC charge. From November 16, 2014, until her termination on September 19, 2018, Plaintiff worked in Defendant's Information Department as an Industrial Commission Technician-Spanish Speaking (ICT). *Id.* ¶ 2. Yvonna Castronova was employed by Defendant as Supervisor of the Information, Docket, and Review Departments and directly supervised Plaintiff from November 16, 2014, until Plaintiff's termination. *Id.* ¶ 4.

As an ICT, Plaintiff's job duties included receiving telephone inquiries and answering questions from callers. *Id.* ¶ 59. At some point (the record is unclear), when Plaintiff was assigned

---

[1] The Court cites to Plaintiff's response to Defendant's statement of facts as "PRDSOF" and Defendant's response to Plaintiff's statement of additional facts as "DRPSOAF."

to answer phones at IWCC, Castronova said to her, "Speak slower so people can understand." *Id.* ¶ 58. Sometime before her 2017 performance evaluation, Plaintiff told Castronova that she did not understand Castronova's instructions or general workers' compensation information because English is her second language. *Id.* ¶ 57. Castronova "encouraged" Plaintiff "to enroll in English as a Second Language (ESL) class" in Plaintiff's 2017 performance evaluation. *Id.* This performance evaluation also notes that Plaintiff does "not respect supervisor's authority" and "respond[s] with emails with allegations of harassment and unfair treatment when work is reviewed." [186-6] at 5.

While working under Castronova, Plaintiff's work was subject to review and scrutiny. PRDSOF ¶ 65.[2] It is undisputed that after identifying and instructing Plaintiff to fix mistakes in Plaintiff's preparation of summons, Castronova reviewed Plaintiff's work to make sure that the mistakes had been corrected before she signed the certification page. *Id.* ¶ 64. When Plaintiff arrived late to work, she would often receive an email from Castronova acknowledging that Plaintiff was late, reminding Plaintiff that she needed to be on time, and directing Plaintiff to either submit a late slip or use benefit time to cover Plaintiff's late arrival. *Id.* ¶ 70. Approximately once or twice per year during the four years that Plaintiff worked under Castronova, Castronova scheduled Plaintiff's lunch break for a time before Plaintiff was to start using benefit time, which required Plaintiff to return to work after her lunch break, rather than take her lunch break in connection with her benefit time. *Id.* ¶ 71. Approximately five to ten times in the four years that Plaintiff worked under Castronova, Castronova denied Plaintiff's requests for time off, citing operational needs, because another of Plaintiff's coworkers had requested that time off. *Id.* ¶ 72. Approximately five to ten times, Castronova denied Plaintiff's requests for time off, stating that it was too early for Plaintiff to make the request, and directed Plaintiff to resubmit the request closer to the date in question. *Id.* ¶ 73. There were occasions when Castronova took up to one week to respond to Plaintiff's requests for time off. *Id.* ¶ 74. Sometime before 2018, Castronova took a label writer, which was owned by Defendant, off Plaintiff's desk and moved it to the desk of a new employee. *Id.* ¶ 75. Sometime in 2016 or 2017, a punch holder, which was owned by Defendant, and that Plaintiff had kept on her desk, was relocated, and Plaintiff was directed to use a punch holder in a common space of the office. *Id.* ¶ 76.

Along with the above facts, Plaintiff offers evidence that Castronova made comments to Plaintiff and to other employees about Plaintiff's accent and ability to speak English. These facts are objected to and disputed by Defendant. To the extent Plaintiff offers conclusory and argumentative descriptions of Castronova's comments, without identifying the comments themselves, the Court does not consider that evidence. *See Lucas v. Chicago Transit Authority,* 367 F.3d 714, 726 (7th Cir. 2004) ("[C]onclusory statements, not grounded in specific facts, are not sufficient to avoid summary judgment."); *Shannon v. Hotel Emps. & Rest. Emps. Int'l Union*, 2005 WL 2387689, at *15 (N.D. Ill. Sept. 22, 2005) ("A bald assertion that Tamarin and DuPont made belittling comments, without any specific, concrete facts, is simply insufficient to defeat a motion for summary judgment."). That said, Plaintiff does offer evidence of specific statements made by Castronova, which Defendant objects to and disputes. Still, even resolving the disputes and objections in Plaintiff's favor, Plaintiff's claims fail, as identified in the analysis below. Thus,

---

[2] The parties dispute whether Plaintiff's work was subject to a different level of scrutiny when compared to other ICTs. DRPSOAF ¶ 5.

3

the Court considers these facts, further identified below, assuming without deciding that they occurred.

At some point, Castronova told other employees not to speak to Plaintiff or help her with her work. DRPSOAF ¶ 6. In addition, Sherry Tate, another employee, testified that sometime before 2016, Castronova told her that Plaintiff "didn't know how to comprehend the English language and she didn't speak English fluently." [188-5] at 165:10–14. Tate also testified that Castronova commented that Plaintiff "did not understand the questions that the petitioners or the other parties was [sic] asking her. She wasn't answering the questions correctly because she basically couldn't comprehend English that well." *Id.* at 167:6–11. Plaintiff also offers a declaration from Robin Coleman, another employee, which states that in or around 2016, she observed Castronova tell Plaintiff things like "You can't even speak" and "You can't even say this" after Plaintiff completed phone calls. [188-7] ¶ 11. She recalls "seeing Castronova, on several occasions, walk around the IWCC office complaining to other employees about Plaintiff's 'broken English.'" *Id.* She also recalls that around that same time, on several occasions, Castronova made statements to other employees like "Don't talk to Gladys" and "Don't help Gladys." *Id.* ¶ 9.

### II. Events Leading to Plaintiff's Termination

Starting in early June 2018, Plaintiff engaged in certain conduct that ultimately led to her termination. Plaintiff admits she engaged in the following:

- On or around June 7, 2018, Plaintiff threw paperclips on the desk of another IWCC employee, Rosalie Goral. Goral reported to Castronova that Plaintiff repeatedly interrupted her and threw paper clips and clip binders at her, and requested to be moved to a different work area away from Plaintiff. PRDSOF ¶¶ 18, 19.

- A few days later, on June 12, 2018, Plaintiff had an altercation at work with another employee, Janette Palomares, during which Plaintiff said to Palomares, "Well, you're just lazy, and I'm not." *Id.* ¶ 20.

- On July 6, 2018, Plaintiff was tasked with answering telephones, but she left her workstation without telling anyone where she was going. *Id.* ¶ 23.

- A few weeks later, on July 19, 2018, Plaintiff used her cell phone to film Castronova without Castronova's permission and did not stop when Castronova asked her to stop filming. *Id.* ¶ 25.

In addition, Castronova reported to John Lagattuta, Defendant's Human Resources Director and Labor Director, that on July 5, 2018, Plaintiff told her that Castronova has "mental illness." *Id.* ¶ 22. Castronova also reported that on July 6, 2018, Plaintiff called Castronova a "bitch," abandoned her workstation when she was not authorized to do so, and then came within 5-12 inches of Castronova's face and stated that she was in the bathroom. *Id.* ¶ 24. Plaintiff denies that she told Castronova she has "mental illness" or that she called her a "bitch."

4

### III. The Termination Proceedings

On July 11, 2018, Plaintiff received a written notification of the allegations against her regarding the incidents on June 7, June 12, July 5, and the two incidents on July 6. *Id.* ¶ 28. On the next day, Plaintiff sat for an investigative interview. *Id.* ¶ 29. Following its internal investigation, Defendant determined that the allegations against Plaintiff regarding the incidents on June 7 and 12 and July 5, 6, and 19 were substantiated. *Id.* ¶ 36. Defendant also determined that Plaintiff's conduct during the incidents violated multiple policies. *Id.* ¶ 37. Pursuant to a progressive discipline system, Defendant determined that termination was the appropriate discipline for Plaintiff's collective infractions due to Plaintiff's past disciplinary history. *Id.* ¶ 38.

The Illinois Department of Central Management Services (CMS) has to approve certain discipline issued to employees of the IWCC. *Id.* ¶ 30. Lagattuta reported the incidents about Plaintiff to CMS and provided witness statements and supporting documentation. *Id.* ¶ 32. CMS determined that Defendant's investigation of Plaintiff was fair; that Defendant had sufficient evidence to substantiate the charges against Plaintiff; that Defendant had just cause to terminate Plaintiff; and that termination was reasonable discipline under the circumstances, considering Plaintiff's collective infractions as a whole and Plaintiff's past disciplinary history. *Id.* ¶ 43. At the time of her termination, Plaintiff's history of progressive discipline at IWCC included two oral reprimands, a written reprimand, and eight previous suspensions. *Id.* ¶ 11.

## Discussion

### I. Counts I, II, III – Employment Discrimination

Plaintiff brings claims for employment discrimination, alleging that she was terminated because of her race, national origin, and color.[3] Plaintiff has two paths to survive summary judgment on these claims. *Gamble v. Cnty. of Cook*, 106 F.4th 622, 625 (7th Cir. 2024). She can "establish a dispute of material fact under the familiar burden-shifting framework" of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* at 625–26. Alternatively, she can "more generally present enough evidence from which a reasonable jury could find that Defendants discriminated against her." *Id.* at 626 (citing *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 766 (7th Cir. 2016)). Plaintiff's claims for race, national origin, and color discrimination fail under both frameworks.

Under the *McDonnell Douglas* framework, a plaintiff must first establish a *prima facie* case of employment discrimination by showing that (1) she belongs to a protected class, (2) her job performance met the defendant's legitimate expectations, (3) she suffered an adverse employment action, and (4) other similarly situated individuals, who were not members of the protected class, received more favorable treatment. *Lewis v. Indiana Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022). If a plaintiff makes this showing, "the burden shifts to the employer to

---

[3] Defendant argues that Plaintiff failed to exhaust her claim for color discrimination. Defendant raised the identical argument on the same grounds on a motion to dismiss, which was rejected by the district judge who previously presided over this case. [41] at 3. Defendant has not made any arguments that alter the analysis, so the Court declines to grant summary judgment for Defendant on this argument. *See Tice v. Am. Airlines, Inc.*, 373 F.3d 851, 853 (7th Cir. 2004) ("[A] ruling made in an earlier phase of a litigation controls the later phases unless a good reason is shown to depart from it.").

articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* at 760. If the defendant makes this showing, "[t]he burden then shifts back to the employee to show why the employer's explanation is pretextual." *Id.*

Plaintiff has failed to establish the second and fourth prongs. To determine whether an employee was meeting her employer's legitimate expectations, a court must evaluate her "job performance through the eyes of her supervisors at the time of her suspension and termination." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008). In this case, Plaintiff was terminated for violating various workplace policies based on six instances of misconduct. Crucially, Plaintiff does not dispute that she engaged in most of the behavior that led to her termination. Because of this, even when viewing the evidence in the light most favorable to Plaintiff, Plaintiff cannot meet her burden on this element. *See, e.g., id.* at 690; *Anders v. Waste Mgmt. of Wisconsin*, 463 F.3d 670, 676 (7th Cir. 2006).

Plaintiff contends that she does not have to meet this prong because Defendant had disparate employment expectations, and in such circumstances, a plaintiff need not make this showing. Even if that were true, Plaintiff still fails to establish a *prima facie* case because she does not point to any comparator who was similarly situated and treated better than she was. While comparators need not be identical, they generally must have "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Gates*, 513 F.3d at 690 (quoting *Snipes v. Illinois Dept. of Corr.*, 291 F.3d 460, 463 (7th Cir. 2002)). Plaintiff argues that other employees received more favorable performance evaluations, and she also identifies three situations involving other employees that, in Plaintiff's view, show disparate treatment. But none of the other employees identified by Plaintiff are true comparators. She makes no showing that any of the other employees engaged in similar conduct or violated the same policies that led to her termination. *See Peirick v. Indiana Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 689 (7th Cir. 2007) ("[I]n deciding whether two employees have engaged in similar misconduct, the critical question is whether they have engaged in conduct of comparable seriousness."). Thus, none of the other employees identified by Plaintiff are proper comparators.

For completeness, the Court adds that even if Plaintiff could establish a *prima facie* case under the *McDonnell Douglas* framework, Defendant has offered a legitimate, non-discriminatory reason for her termination, and Plaintiff has not established that this reason was pretextual. Defendant has shown that it terminated Plaintiff after it found she had engaged in multiple instances of misconduct that violated multiple IWCC policies. This is certainly a legitimate, non-discriminatory reason for Plaintiff's termination.

Even moving on to pretext, Plaintiff has failed to meet her burden. Plaintiff must "establish that there is an issue of material fact as to whether [Defendant's] proffered reasons are merely pretext for unlawful discrimination or retaliation." *Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004). Pretext "involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is [a] lie, specifically a phony reason for some action." *Burton v. Bd. of Regents of the Univ. of Wis. Sys.*, 851 F.3d 690, 698 (7th Cir. 2017) (alteration in original) (quoting *Harden v. Marion Cty. Sheriff's Dep't*, 799 F.3d 857, 864 (7th Cir. 2015)). Plaintiff argues that "Defendant's

6

stated motivation for [her] firing is dishonest" because (1) Defendant's stated reasoning has evolved, (2) Defendant relied upon biased and incomplete information to conclude that she violated IWCC policies warranting termination, and (3) Defendant deviated from procedure in seeking approval for her termination. [188] at 14. None of these arguments is successful.

As to the first argument, Plaintiff asserts that Defendant initially alleged that Plaintiff left work early on July 3, 2018, without approval, but that reason was ultimately not included as a rationale for her termination. But, "[m]erely providing multiple, or additional, reasons for an adverse employment decision does not establish pretext." *Saud v. DePaul Univ.*, 154 F.4th 563, 569 (7th Cir. 2025). Plaintiff also argues that the narrative has shifted because Defendant now suggests in its summary judgment brief that the termination was warranted due to the entirety of Plaintiff's disciplinary history, even though the termination documents substantively address only the incidents in June and July 2018. This argument lacks merit. "[T]o give rise to pretext, 'explanations must actually be shifting and inconsistent.'" *Id.* (quoting *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 881 (7th Cir. 2016)). It is undisputed that Defendant determined that termination was the appropriate discipline for Plaintiff's collective infractions due to Plaintiff's past disciplinary history, PRDSOF ¶ 38, and the notice of termination document recounts that disciplinary history. [186-3]. Thus, Defendant's argument on summary judgment is not a shift in the narrative from Defendant's previously stated reasons for the termination.

As to her second argument on pretext, Plaintiff admits she engaged in most of the conduct that led to her termination, a fact that she does not engage with in her briefing. Plaintiff argues that the investigation was biased and that Defendant credited witnesses with biases towards Plaintiff and discredited witnesses who corroborated Plaintiff's version of events. [188] at 16–17. But "[a]n inquiry into pretext requires that [the court] evaluate the honesty of the employer's explanation, rather than its validity or reasonableness." *Hill v. Tangherlini*, 724 F.3d 965, 968 (7th Cir. 2013); *see also Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 478 n.2 (7th Cir. 2010) ("That a jury might disagree with [the employers' conclusions about the plaintiff's insubordination] or even find that they erred in their assessment does not render their termination decision discriminatory."). Even if Defendant relied on "incomplete and biased factual determinations," Plaintiff has no evidence that Defendant did not honestly believe it was making the correct decision. *See, e.g.*, *Saud*, 154 F.4th at 571.

As to her third and final argument, Plaintiff maintains that because the CMS employee involved in the termination proceedings provided written revisions to the termination documents and requested "additional time beyond the standard 7-10 days for review," Defendant deviated from its standard procedure. [188] at 17–18. Yet, Plaintiff points to no evidence that CMS providing written revisions is actually a deviation from any standard procedure. And the revisions that the CMS employee offered to Defendant do not suggest that Defendant had strayed from any standard procedure; they suggest only that the employee who drafted the particular document at issue had included more detail than was necessary for that document. *See* DRPSOAF ¶ 37. As to the timeline, even if CMS took longer than normal to approve the termination, a fact that Defendant disputes, there is no evidence that *Defendant* "failed to abide by its own procedures" in seeking her termination. *See Everett v. Cook County*, 655 F.3d 723, 728 (7th Cir. 2011) ("But for a jury to be able to infer any impropriety based on an employer's failure to abide by its own procedures, the

employee must show that there was an actual procedure in place that served to bind the employer's discretion."). Accordingly, Plaintiff fails to establish pretext under *McDonnell Douglas*.

Plaintiff's claims for employment discrimination fare no better under *Ortiz*. Under the *Ortiz* framework, the standard is "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz*, 834 F.3d at 765. The court considers the evidence "as a whole, rather than asking whether any particular piece of evidence proves the case by itself." *Id.* Here, there is simply not enough evidence to create a dispute of fact about the alleged discrimination, even when proceeding under the *Ortiz* framework. Plaintiff was terminated after Defendant determined she engaged in conduct that violated various workplace policies, and Plaintiff doesn't dispute that she engaged in most of that conduct. This case is similar to that of *Igasaki*, where the plaintiff "recite[d] a litany of past wrongs purportedly probative of race or sex discrimination, including mandatory tasks made voluntary for others, increased workload, constant admonishment, arbitrary remote work and identification policies, and general harsh treatment." *Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 958 (7th Cir. 2021). The Seventh Circuit found that such evidence was insufficient under *Ortiz*, noting that the supervisor's treatment "may have been the result of [the plaintiff's] performance: a string of poor reviews, corrective action plans, and suspensions." *Id.* at 958–59. So too here. The undisputed record demonstrates that Plaintiff was fired for her workplace behavior, not because of any protected characteristics. No reasonable jury could find otherwise.

Plaintiff asserts that Castronova's statements about Plaintiff's accent and ability to speak English permit an inference of discrimination. But "isolated comments must be contemporaneous with termination or causally related to the termination process in order to be probative of discrimination." *Castetter v. Dolgencorp, LLC*, 953 F.3d 994, 997 (7th Cir. 2020); *see also Sun v. Board of Trustees of Univ. of Illinois*, 473 F.3d 799, 813 (7th Cir. 2007) ("[S]tray remarks that are neither proximate nor related to the employment decision are insufficient to defeat summary judgment."). Here, even when assuming Castronova's comments reflect animus towards Plaintiff's protected characteristics, such evidence is too attenuated from Plaintiff's termination to raise a genuine issue for trial. There is nothing in the record linking Castronova's earlier remarks to the employment decision in question. *See Adelman-Reyes v. Saint Xavier Univ.*, 500 F.3d 662, 666–67 (7th Cir. 2007). And as has been explained, the record establishes that after Castronova supposedly made those comments, Plaintiff engaged in conduct that violated Defendant's workplace policies. For these reasons, the Court grants summary judgment for Defendant on Plaintiff's claims for employment discrimination based on race, national origin, and color.

## II. Count IV – Retaliation

In Count IV of the complaint, Plaintiff brings a retaliation claim. Plaintiff maintains that she was terminated in retaliation for filing her 2015 EEOC charge and 2016 lawsuit, and for complaining about harassment during the termination proceedings. "To survive summary judgment on a timely retaliation claim, plaintiff must offer evidence of: '(1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two.'" *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 718 (7th Cir. 2018) (quoting *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017)). The protected activity must be the "'but-for'

8

cause of the challenged adverse employment action." *Brooks v. Avancez*, 39 F.4th 424, 440 (7th Cir. 2022).

As with employment discrimination claims, a plaintiff may establish a *prima facie* case of retaliation under either the *McDonnell Douglas* or the *Ortiz* framework. Under the *McDonnell Douglas* framework in the retaliation context, a plaintiff must show that "(1) [she] engaged in a protected activity, (2) [she] performed [her] job duties according to [her] employer's legitimate expectations, (3) [she] suffered an adverse action, and (4) [she] was treated less favorably than similarly situated employees who did not engage in protected activity." *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018). "[T]he burden then shifts to the employer to provide a legitimate, non-discriminatory reason for the adverse action." *Id.* "If the employer does so, the burden shifts back to the employee to prove that the employer's stated reason is mere pretext." *Id.* Under the *Ortiz* approach, "the evidence would have to establish either a causal connection between [Plaintiff's] protected activity and the adverse action [she] suffered or else support an inference of retaliatory motive." *Id.* at 871.

Plaintiff's retaliation claim fails under both *McDonnell Douglas* and *Ortiz*. Under the *McDonnell Douglas* approach, Plaintiff failed to present evidence of a similarly situated comparator who did not engage in protected activity but received better treatment. Nor can she establish that she was meeting Defendant's legitimate expectations. She therefore cannot establish a *prima facie* case of retaliation. *See, e.g.*, *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 371 (7th Cir. 2019). But even if she could, Defendant offers legitimate, non-discriminatory reasons for terminating Plaintiff's employment: her workplace misconduct. "In light of this nonretaliatory explanation, to survive summary judgment, [Plaintiff] must 'establish that there is an issue of material fact as to whether [Defendant's] proffered reasons are merely pretext for unlawful discrimination or retaliation.'" *Argyropoulos v. City of Alton*, 539 F.3d 724, 736 (7th Cir. 2008) (quoting *Hudson*, 375 F.3d at 561). As noted above, Plaintiff fails to raise a genuine dispute of material fact on this issue.

Plaintiff's claim fares no better under *Ortiz*. No reasonable jury could find that Plaintiff's 2015 EEOC charge, 2016 lawsuit, or complaints about harassment were the "but-for" cause of her termination because it is undisputed that Plaintiff was fired after engaging in conduct that violated Defendant's workplace policies, much of which Plaintiff admits she engaged in. *See Williams v. DeJoy*, 2025 WL 601212, at *3 (7th Cir. Feb. 25, 2025) (affirming summary judgment for the defendant where the plaintiff did not "contest that her attendance records show chronic tardiness and unexplained absences"). Plaintiff maintains that after she filed her 2015 EEOC charge and 2016 lawsuit, she received poor performance reviews and differential treatment, which was a pattern of conduct that "culminated in [her] termination and bridges the gap between her original protected activity and her termination." [188] at 12–13. Certainly, evidence of a pattern of retaliatory conduct between the protected activity and adverse employment action can be sufficient evidence when there is an extended time between the protected activity and adverse action. *See, e.g.*, *Malin v. Hospira, Inc.*, 762 F.3d 552, 560 (7th Cir. 2014). The issue for Plaintiff is that "inappropriate workplace activities are not legitimized by an earlier-filed complaint of discrimination." *Argyropoulos*, 539 F.3d at 734. As such, "an employee's complaint of harassment does not immunize her from being subsequently disciplined or terminated for inappropriate workplace behavior." *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 359 (7th Cir. 2002), *overruled on*

9

*other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013). After Plaintiff filed her EEOC charge and the 2016 lawsuit, there were significant intervening events that took place — workplace misconduct that Plaintiff admits she engaged in and/or that was substantiated after an investigation. Plaintiff also maintains that she raised complaints about harassment during the termination proceedings, which gives rise to the inference that her termination was retaliatory. However, "[e]mbedding a discrimination complaint within otherwise-sanctionable misconduct is not enough to create a triable issue of causation." *Shirk v. Trs. of Indiana Univ.*, 2026 WL 395904, at *7 (7th Cir. Feb. 12, 2026).

Plaintiff also focuses on the timing of her termination in relation to the dismissal of her prior lawsuit. Although Plaintiff maintains that Defendant recommended her termination on the same day she dismissed her prior lawsuit, it is undisputed that Plaintiff had received notice of the misconduct-related charges against her on the day the lawsuit was dismissed. *See* PRDSOF ¶ 28. Further, more than two years had passed since the protected activities (the filing of the EEOC charge and lawsuit), which lessens the inference of causation that can be drawn from timing alone. *See Naficy v. Illinois Dep't of Hum. Servs.*, 697 F.3d 504, 513 (7th Cir. 2012) ("The five-year gap [between the protected activity and adverse employment action] makes it extremely unlikely that the two events were related."); *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) ("For an inference of causation to be drawn solely on the basis of a suspicious-timing argument, we typically allow no more than a few days to elapse between the protected activity and the adverse action.").

But even if the timing of her termination could be deemed suspicious given that it followed soon after the prior lawsuit was dismissed, the Seventh Circuit has commented that where "there are reasonable, non-suspicious explanations for the timing of [the plaintiff's] termination . . . we will not deny summary judgment solely on the strength of [suspicious timing]." *Morgan v. SVT, LLC*, 724 F.3d 990, 998 (7th Cir. 2013). And, as referenced above, "where a 'significant intervening event separat[es]' an employee's protected activity from the adverse employment action he receives, a suspicious-timing argument will not prevail." *Kidwell*, 679 F.3d at 967 (alteration in original) (quoting *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 675 (7th Cir. 2011)). Even viewing the record in the light most favorable to Plaintiff, no reasonable jury could find that Plaintiff's termination was retaliatory. For these reasons, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

### III. Hostile Work Environment

Although the Court itself can identify no claim for hostile work environment in the operative complaint, both parties briefed the summary judgment motion as if Plaintiff brought such a claim. The Court will address it out of an abundance of caution, but will also note that no reasonable reading of the Complaint reveals any claim for hostile work environment.

To prove a claim for hostile work environment, a plaintiff must demonstrate that "(1) she was subject to unwelcome harassment; (2) the harassment was based on [a protected category]; (3) the harassment was sufficiently severe or pervasive, both subjectively and objectively, so as to alter the conditions of her employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer liability." *Brooks*, 39 F.4th at 441. The court must not "carve up the incidents

of harassment and then separately analyze each incident, by itself, to see if each rises to the level of being severe or pervasive." *Mason v. S. Ill. Univ. at Carbondale*, 233 F.3d 1036, 1045 (7th Cir. 2000). "Instead, a look at the totality of the circumstances must be had." *Hall v. City of Chicago*, 713 F.3d 325, 331 (7th Cir. 2013). In doing so, a court must consider "the frequency of the discriminatory conduct, how offensive a reasonable person would deem it to be, whether it is physically threatening or humiliating conduct as opposed to verbal abuse, whether it unreasonably interferes with an employee's work performance, and whether it was directed at the victim." *Lambert v. Peri Formworks Sys., Inc.*, 723 F.3d 863, 868 (7th Cir. 2013).

The Court finds that no reasonable jury could find that Plaintiff was subject to a hostile work environment. While it is undisputed that Plaintiff was not subject to any racial slurs and that no one made derogatory comments about Plaintiff's race, national origin, or color during the four years she worked under Castronova, *see* PRDSOF ¶¶ 77, 78, Plaintiff does identify evidence that is reasonably connected to her protected characteristics, *i.e.*, comments from Castronova that Plaintiff can't speak English and about her accent. Plaintiff also points to Castronova's suggestion that she enroll in ESL classes in her 2017 performance review.

As to the performance review, the Court finds that the suggestion that Plaintiff enroll in ESL classes was not objectively hostile when considered in the context of the undisputed record. Plaintiff does not dispute that it was only after she told Castronova that she did not understand Castronova's instructions or general workers' compensation information because English is her second language that Castronova made this suggestion. *Id.* ¶ 57. Thus, with the proper context, the reference to ESL classes can hardly be considered objectively offensive. As to the other comments made about Plaintiff's accent and ability to speak English, even viewing them in the light most favorable to Plaintiff as reflecting an animus towards her race, national origin, and color, they were not threatening, overtly racist, nor frequent enough to rise to the level of an objectively hostile work environment under Seventh Circuit precedent. *See Porter v. City of Chicago*, 700 F.3d 944, 956 (7th Cir. 2012) (noting that "sporadic inappropriate and rude comments" made by supervisors do not amount to conduct required to support a hostile work environment claim); *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011) ("We will not find a hostile work environment for mere offensive conduct that is isolated, does not interfere with the plaintiff's work performance, and is not physically threatening or humiliating."); *see also Aguilera v. Vill. of Hazel Crest*, 234 F. Supp. 2d 840, 847 (N.D. Ill. 2002) ("All that [the plaintiff] puts forth are assertions that other [employees] said [his] English was bad and he was a bad communicator. Objectively, that is not enough to demonstrate a hostile work environment.").

Of course, the Court must evaluate the totality of the circumstances. Plaintiff maintains she was subject to a hostile work environment due to Castronova's comments and because Castronova subjected her to additional levels of scrutiny and disparate treatment, including that Castronova "criticized" her in performance reviews for questioning Castronova's authority and complaining of harassment, denied her requests for time off on five to ten occasions or told her the requests were made too early, scheduled her lunch break in an unfavorable way once or twice a year, directed Plaintiff to submit a late slip or use benefit time when she arrived late to work, and removed a label writer and punch holder from Plaintiff's desk.

11

The Court finds that the record does not establish an objectively hostile or offensive work environment that was "permeated with discriminatory ridicule, intimidation, and insult." *Luckie v. Ameritech Corp.*, 389 F.3d 708, 714 (7th Cir. 2004); *see also Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014) (affirming summary judgment for the defendant where the work environment "was not physically threatening, nor was it openly racist, nor did it unreasonably interfere with plaintiffs' performance" despite allegations of "unfair suspensions, financially harmful floor reassignments, unjustified write-ups, and unusually close supervision"). Although the evidence suggests that the workplace was perhaps unprofessional, "[i]nsults, personal animosity, and juvenile behavior are insufficient evidence of a hostile work environment unless they are so pervasive or severe as to interfere with an employee's work performance." *Brooks*, 39 F.4th at 441. And evidence that Plaintiff was subject to stricter scrutiny within her job duties and received negative performance reviews does not amount to an actionable claim. *See, e.g.*, *Hambrick v. Kijakazi*, 79 F.4th 835, 843 (7th Cir. 2023) ("[H]aving supervisors who are short tempered, hostile, unfairly critical, and disrespectful, does not amount to objectively offensive, severe, or pervasive conduct." (cleaned up)); *Hobbs v. City of Chicago*, 573 F.3d 454, 464 (7th Cir. 2009) ("No reasonable jury could conclude that being assigned duties that were part of one's job description . . . amount[s] to a hostile work environment."). In summary, none of Plaintiff's complaints, when considered in combination, were so severe or pervasive as to alter the conditions of her work environment.

The Court also notes that Plaintiff offers no evidence that the conduct she complains of interfered with her work performance. Plaintiff states that "Castronova's pattern of misconduct was sufficiently severe and pervasive to interfere with [her] work performance." [188] at 11. But the only argument that Plaintiff makes in support of this conclusory claim is that "at the very end of her employment, [she] was so distraught that she felt the need to record Castronova as proof of her consistent harassment." *Id.* (citing PSOAF ¶ 27). The record does not support this notion. The fact Plaintiff cites in support of this argument states that Plaintiff filmed Castronova to prove the alleged harassment. It says nothing about whether Plaintiff was "so distraught" or otherwise unable to do her job. *C.f. Gentry v. Export Packaging Co.*, 238 F.3d 842, 851 (7th Cir. 2001) (holding it was reasonable for the jury to find a hostile work environment due to alleged sexual harassment where the plaintiff "found it hard to concentrate on her work," complained about the harassment, hated her job, "often cried when she went to work," and "sought medical care and was treated for anxiety and depression"). Based on the totality of the circumstances, Plaintiff has not presented evidence from which a reasonable jury could find that Castronova's actions created an environment so severe or pervasive as to alter the conditions of Plaintiff's employment.

## Conclusion

For the above reasons, Defendant's motion for summary judgment [184] is granted. Judgment shall enter in favor of Defendant and against Plaintiff.

**SO ORDERED.**

Dated:  March 5, 2026

                                                      Sunil R. Harjani
                                                      United States District Judge